Carmen Rosa Josefa Gomez Sanchez
Vda De GONZALEZ,
Plaintiff-Appellee,

v.

NAVIERA NEPTUNO A.A., and El
Kollao, Defendants-Appellants.

No. 86–2138.

United States Court of Appeals,
Fifth Circuit.

Nov. 25, 1987.

Derek Walker, Ken Servay, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., Kent M. Adams, Brown & Adams, Tower, Beaumont, Tex., for defendants-appellants.

Richard L. Tate, Young, Cook & Hampton, Houston, Tex., for plaintiff-appellee.

Before BROWN, RANDALL, and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Our opinion in this case has been held pending the en banc decision of this court in *In Re: Air Crash Disaster near New Orleans*, 821 F.2d 1147 (5th Cir.1987). *Air Crash* expressly overruled a long line of forum non conveniens cases decided by this Court in admiralty and maritime matters. 821 F.2d at 1162–63 n. 25. Bound by the decision of the en banc court that there is no need for a different analysis in maritime cases, the outcome of this case is predicated upon the dictates of *Air Crash*.

There are two separate problems presented by this case: (i) choice of law, and (ii) choice of forum. The central issue presented is whether the wrongful death claims of the Peruvian survivors of a Peruvian sailor killed in the United States while serving on a Peruvian flag vessel, owned by Peruvian citizens, under articles prepared pursuant to a Peruvian collective bargaining agreement should be tried in a United States court. Following *Air Crash*, and finding no basis for the conclusion of the lower court that the United States was a more convenient forum, we reverse.

### Stranger in a Strange Land

Carmen Gonzalez filed suit against Naviera Neptuno (Neptuno), owner of M/V EL KOLLAO, under the Jones Act and general maritime law seeking damages for the death of her son, Fernando Gonzalez–Sanchez, who was killed in Port Arthur, Texas, while serving as a seaman aboard M/V EL KOLLAO. Fernando and his mother were Peruvian citizens and residents. Fernando signed Peruvian shipping articles in Peru to sail aboard EL KOLLAO on a voyage beginning and ending in Peru. Fernando joined EL KOLLAO, in Callao, Peru, the vessel's home port. He was employed under a contract signed pursuant to a Peruvian collective bargaining agreement, binding all Peruvian shipping companies and seamen. All crew members signing aboard Peruvian flag vessels are bound by Peruvian law to settle any and all disputes arising from employment related torts in a Peruvian court of law.

Neptuno is a Peruvian shipping company which maintains no offices or general agents in the United States. Neptuno is fully owned by residents of countries other than the United States; its president is a citizen and resident of Peru. Except for calls made by its vessels to ports in the United States, Neptuno has no business dealings or operations in this country. As a shipping company involved in multi-national trade, Neptuno's vessels carry cargo to and from the United States as well as to and from ports in Mexico, Panama, Colombia, Chile, Venezuela and Peru. Typically, Neptuno's vessels begin and end their voyages in Peru. Between 1981 and 1984, approximately 11.46% of the cargo carried was cargo destined for the United States.

Gonzalez filed suit against Neptuno in Beaumont, Texas. Neptuno filed motions challenging the jurisdiction of the federal court and seeking dismissal on the grounds of forum non conveniens. The trial court initially ordered that the motions be considered at the time of trial, but they were eventually considered on briefs one month prior to trial. Because of the pending jurisdictional motions, Neptuno conducted virtually no discovery on the merits prior to the disposition of these motions.

The District Court denied Neptuno's motions without written reasons. Neptuno sought certification for interlocutory appeal under 28 U.S.C. § 1292(b). The certifi-

cation motion was denied and Neptuno immediately filed a petition for a writ of mandamus which was denied by this court. Neptuno's motion for reconsideration was also denied on July 1, 1985.

On July 18, 1985, the District Court set a trial date of August 29, 1985. This order gave the parties approximately six weeks to complete discovery on the merits, discovery Neptuno had not yet begun. The difficulty in arranging numerous depositions in Peru prompted Neptuno to seek a continuance of the trial date. This was denied and Neptuno had to go to trial without the benefit of the testimony of several fact witnesses.

After Gonzalez presented her case, the District Court ordered that the trial be recessed for approximately one month, after which time the evidence would be concluded. During the recess, Neptuno would be permitted to take no more than four depositions and would be required to pay the expenses of plaintiff's counsel for any depositions taken in any place other than Beaumont. At this time, more than twenty depositions had been noticed, primarily of Peruvian citizens, but not yet taken.

Although this was a dispute between two Peruvian citizens, Neptuno was essentially precluded from taking discovery in Peru because of the time limitations imposed and the order requiring Neptuno to pay all expenses of plaintiff's counsel for depositions taken outside of Beaumont, Texas. Many, if not all, of the fact witnesses in this case were outside the jurisdiction of the Texas District Court. Neptuno had no means to compel the testimony of those witnesses residing in Peru.[1]

Mrs. Gonzalez filed suit against Neptuno on April 12, 1984. The case went to trial on August 29, 1985, less than eighteen months later. We do not pass on the reasonableness of Neptuno's failure to commence discovery prior to the resolution of the jurisdictional motions. Suffice it to say that we recognize the difficulties inherent in obtaining foreign discovery.

■ *Air Crash* directs us away from the tortuous detours taken in recent years by maritime jurisprudence back to the straight and narrow (or straighter and narrower) path set out by *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and *Piper Air Craft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Although the plaintiff's choice of forum should not ordinarily be disturbed, the doctrine of forum non conveniens permits a court to resist imposition upon its jurisdiction even when subject matter jurisdiction is conferred by statute or personal jurisdiction is conferred by minimum contacts or consent. *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed. at 1062.

In determining whether a particular forum is appropriate, the court is required to balance the private interests of the litigants as well as the public interests of the chosen forum. The private interests to be considered include: (i) relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of premises, if a view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive; and (v) enforceability of a judgment if one is obtained. *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed. at 1062.

The public interest factors include: (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having the trial of a case in a forum that is familiar with the law that governs the action; (iv) the avoidance of unnecessary problems and conflicts of law, or an application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty. *Gilbert*, 330 U.S. at 510, 67 S.Ct. at 843, 91 L.Ed. at 1063; *Air Crash*, 821 F.2d at 1162–63. No single factor should be given conclusive weight and a plaintiff's initial

---

1. Neptuno sought to prove, among other things, that Mrs. Gonzalez was not the proper party to bring this action as Fernando had an illegit-

imate child. The child's mother refused to come to the United States to testify, nor would she agree to have her deposition taken.

choice of forum should be respected, as much as possible.

Applying those factors in this case, we have no difficulty in determining that the United States was not the most convenient forum. With regard to the private interests of the litigants, the overwhelming majority of the witnesses reside in Peru. Gonzalez is a resident and citizen of Peru, Neptuno is a Peruvian corporation, and M/V EL KOLLAO is a Peruvian flag vessel. The decedent was a Peruvian citizen, his contract of employment was signed in Peru pursuant to a Peruvian collective bargaining agreement. The contract itself stated that parties to the contract would be governed by Peruvian law with regard to any tort claims.

Certainly with respect to whether Mrs. Gonzalez or the mother of Fernando's child was the proper party to bring this suit, and with regard to whether either suffered any compensable loss, these issues were dependent on testimony and evidence located in Peru. It is obvious to this court that insofar as ease of access to sources of proof is concerned, the balance weighs heavily in favor of trial in Peru. The only fact witness not readily available in Peru is the Beaumont police officer who investigated the accident. Although only a minor witness, his deposition and trial testimony are both available for use in Peru if necessary.

Although Gonzalez claims that Neptuno was dilatory in its discovery activities, the obvious difficulties associated with arranging depositions of non-English speaking foreign citizens in a foreign country are apparent. The attorneys in this case are all American lawyers. It is unlikely that the numerous depositions which needed to

be taken of Peruvian citizens could be taken without translators. The cost of transporting these witnesses to the United States for trial testimony would likewise be prohibitive, not to mention the additional cost of translators in the United States.

Neptuno has no corporate offices, bank accounts or permanent employees stationed in the United States. Unlike enforcing a Peruvian judgment in Peru, there would be considerable difficulty in enforcing an American judgment obtained against Neptuno in the United States. In sum, the private interests weigh strongly in favor of the defendant and a dismissal of this suit under the doctrine of forum non conveniens.

As no one set of factors is conclusive, we also address the factors of public interest. The administrative difficulties associated with trying a case in a forum located thousands of miles away from the majority of the witnesses and the evidence are obvious. The difficulties in obtaining witnesses and costs of transporting witnesses and attorneys back and forth between the United States and Peru tend to contribute to delays in trial preparation. Although the State of Texas has an interest in maintaining safe conditions on board vessels temporarily docked in Texas, that interest can be easily protected by the plaintiff who is bent on making the defendant pay for the unsafe conditions on board the vessel.

### Choice of Law—Peruvian or American?

■ Although *Air Crash* rejected our maritime approach which fixed choice of law as the predominate, if not the exclusive factor, choice of law is still an important consideration. Certainly it is relevant in determining the public interests at stake.[2]

2. *See Gilbert.* "There is an appropriateness, too, in having the trial of a ... case in a forum that is at home with the ... law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to itself." 330 U.S. at 509, 67 S.Ct. at 843, 91 L.Ed. at 1063; so it is in *Reyno.* "Consideration of these [choice of law] problems was clearly appropriate under *Gilbert;* in that case we explicitly held that the need to apply foreign law pointed toward dismissal." 454 U.S. at 260, 102 S.Ct. at 268, 70 L.Ed.2d at

438. This was of recurring concern in *Air Crash,* which determined that "the public interest factors include ... the avoidance of unnecessary problems in conflicts of law or in application of foreign law ..." 821 F.2d 1163. *See generally id.* at 1153 n. 9. "We agree with the District of Columbia Circuit when it stated that '... a trial court has discretion to grant forum non conveniens dismissal upon finding that ... foreign law will predominate if jurisdiction is retained,'" 821 F.2d at 1165-66, (quoting *Pain*

As reflected by *Lauritzen* and that great body of law in all American maritime circuits in which a foreign seaman sues for injury in an American court, the immediate, frequently decisive, question is what law controls, American or foreign? A simple answer to this underlying question is: foreign law applies because American law clearly does not. In fathoming that juridical riddle there can be no doubt that a federal district court is better suited than a foreign forum to determine the law of the United States, and by reaching that conclusion the federal court is spared the task of divining the law of the foreign state. By the same token, a foreign forum is better qualified than an American court to determine the application of foreign law. As this is an admiralty case in an American court, the choice of law is determined by the *Lauritzen-Rhoditis* test.[3]

*Lauritzen-Rhoditis* sets out eight factors which govern the choice of law analysis:

(i) the place of the wrongful act;

(ii) the flag of the vessel;

(iii) the domicile of the seamen;

(iv) the allegiance of the shipowner;

(v) the place of contract;

(vi) the accessibility of the foreign forum;

(vii) the law of the forum; and

(viii) the defendant's base of operations.

*Lauritzen*, 345 U.S. at 583–93, 73 S.Ct. at 928–34, 97 L.Ed. at 1268–73; *Rhoditis*, 398 U.S. at 308–09, 90 S.Ct. at 1733–34, 26 L.Ed.2d at 255–56. Analysis of these factors compels the conclusion that Peruvian law is applicable.

(i) The wrongful act here occurred in Port Arthur, Texas. This is the only meaningful contact with the United States or with the State of Texas. (ii) EL KOLLAO is a Peruvian flag vessel. (iii) Fernando Sanchez was a citizen, resident and domiciliary of Peru. (iv) Neptuno is a Peruvian corporation, owned by Peruvian citizens. (v) Fernando's employment contract was signed in Peru, pursuant to a Peruvian collective bargaining agreement binding all Peruvian sailors and flag vessels. (vi) A Peruvian forum would be infinitely more accessible than a forum in Beaumont, Texas, as the plaintiff and the majority of the fact witnesses are Peruvian citizens. (vii) Gonzalez filed suit in Texas because the law of the forum, the Jones Act and general maritime law, provides greater recovery than would Peruvian law. *Reyno* has stated explicitly, however, that the mere fact that the substantive law of one forum is more favorable than that of another is not to be dispositive, and in fact should *not* be given substantial weight.[4]

■ Since determination of the important question of whether American law does or does not apply turns substantially on *Lauritzen-Rhoditis*, the base of operations of the defendant may sometimes be decisive. There is simply no factual basis for the District Court's conclusion that Neptuno maintained a base of operations in the United States. The mere fact that Neptuno vessels carried some cargo for delivery to the United States and occasionally called at ports in the United States to pick up out-bound cargo does not justify a finding of an American base of operations. Neptuno was legitimately a Peruvian corporation, flying the Peruvian flag. This was not a situation where a sham corporation was founded in one country and vessels registered under that flag in order to obtain economic advantages. Nor is it one

*v. United Technologies,* 637 F.2d 775, 792 (D.C. Cir.1980)).

3. *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Hellenic Lines v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). Although a federal court customarily applies the forum's choice of law analysis, sitting in admiralty, we apply admiralty choice of law. Due to the multi-national character of most maritime ventures, the forum in which suit is brought is quite often unrelated to either the litigants or the action in any meaningful way. Use of *Lauritzen* contributes to the uniformity of maritime jurisprudence.

4. *Reyno* recognized the problem of increasing the attractiveness of our already overcrowded courts to foreign plaintiffs. Additionally, there are substantial practical problems associated with weighing the differences between the laws of two sovereigns. 454 U.S. at 251–52, 102 S.Ct. at 263–64, 70 L.Ed.2d at 432–33. *See also Air Crash,* 821 F.2d at 1163 n. 25.

in which foreign principals maintain a residence in the United States, directing and controlling operations of the company's vessels worldwide. Neptuno's base of operations was certainly not in Beaumont, Texas nor anywhere in the United States.

■ Under *Lauritzen,* the appropriate law would be that of Peru. The fact that foreign, not American, law is applicable gives further weight to the conclusion that Peru is the most convenient forum for this litigation.

■ Our analysis of the *Gilbert, Reyno* and *Lauritzen-Rhoditis* factors leads inexorably to the conclusion that the District Court erred in refusing to grant Neptuno's motion to dismiss for forum non conveniens. However, to once again discourage the necessity for a fresh analysis of the record at the appellate level, we reiterate the requirement of *Air Crash* that the District Court set out clearly (either formally or stated on the record) its detailed findings and conclusions supporting or denying such a motion to dismiss. Consistent with our respective roles, it is not the function of the Court of Appeals to initially perform a de novo resolution of forum non conveniens issues. *Air Crash,* 821 F.2d at 1166 n. 32. Although the District Court, in denying Neptuno's motion to dismiss, did not have the benefit of our guidance in *Air Crash* and did not give written reasons, sufficient information for our analysis was available in the findings of fact and conclusions of law issued following trial on the merits.

What has happened here demonstrates why we are so insistent that the trial court carefully state in detail why the motion to dismiss on forum non conveniens is granted or denied. The denial of a motion to dismiss for forum non conveniens is not a final order under 28 U.S.C. § 1291, and therefore is not immediately appealable.

*Partrederiet Treasure Saga v. Joy Manufacturing Co.,* 804 F.2d 308, 309–10 (5th Cir.1986). Neptuno sought certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which the trial court denied. Neptuno's sole avenue for review was then a petition for mandamus from this court with all of the strict limitations of that procedure, plus again the total absence of reasons why the judge did what he did. We denied the writ resulting in the trial and findings on which we could responsibly act.

■ Although the fact that a trial on the merits has occurred is a factor meriting consideration in determining whether the trial court abused its discretion in refusing to grant the motion to dismiss we believe Neptuno has shown sufficient prejudice to warrant vacating that judgment and, in effect, transferring the case to Peru. Neptuno has demonstrated the difficulties associated with obtaining foreign witnesses or their deposition testimony. To the admonition of *Air Crash* to put on the record adequate detailed reasons for action in granting or denying motions to dismiss forum non conveniens, we would add that trial judges should be hospitable to applications for Interlocutory Appeals under 28 U.S.C. § 1292(b).[5]

■ Applying the above principles and standards, we conclude that the District Court abused its discretion in denying Neptuno's motion to dismiss for forum non conveniens. Consequently, the judgment must be reversed. Both private and public interests weigh heavily in favor of a Peruvian forum, applying Peruvian law. A remand is necessary to impose the usual conditions on the dismissal order. In fashioning an appropriate order of dismissal, we suggest that the District Court give consideration to conditioning the dismissal on the following:[6] (i) that Neptuno submit to ser-

**5.** We recognize the decision to certify is, however, within the considered discretion of the trial judge and as the court indicated in *Air Crash,* we cannot direct that all forum non conveniens issues be certified. The district courts should bear in mind, however, that pretrial certification of this issue not only obviates

a possible useless trial, but affords an effective review by this court.

**6.** The conditions imposed by the order of dismissal are within the discretion of the District Court. These considerations are only suggestions, and the District Court is free to add other conditions or to modify those suggested here.

vice of process and jurisdiction in the appropriate Peruvian forum, (ii) in which Gonzalez shall file suit within 90 days of the order of dismissal; (iii) that Neptuno shall formally waive in the Peruvian proceeding any statute of limitations defense that has matured since the commencement of this action in the Eastern District of Texas; (iv) that Neptuno formally agree to make available in Peru all relevant witnesses and documents within its control; (v) that Neptuno formally agree to satisfy any final judgment rendered by the Peruvian court; and (vi) that should Neptuno fail to promptly satisfy any of these conditions, the District Court will resume jurisdiction.[7]

REVERSED AND REMANDED.

*Diaz v. Humboldt,* 722 F.2d 1216, 1219 n. 1 (5th Cir.1984).

7. *See Diaz,* 722 F.2d at 1219; *Vaz Borralho v. Keydril,* 696 F.2d 379, 394–95 (5th Cir.1983).