**SOKAOGON GAMING ENTERPRISE CORPORATION and Sokaogon Chippewa Community, Plaintiffs–Appellees,**

v.

**TUSHIE-MONTGOMERY ASSOCIATES, INCORPORATED, Defendant–Appellant.**

No. 95–3036.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1996.

Decided June 5, 1996.

---

Thomas J. Basting, Sr. (argued), Brennan, Steil, Basting & MacDougall, Janesville, WI, Kevin C. Potter, Brennan, Steil, Basting & MacDougall, Madison, WI, for Plaintiffs–Appellees.

Arthur F. Radke (argued), Laura A. Harmon, Hefter & Radke, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and RIPPLE and MANION, Circuit Judges.

POSNER, Chief Judge.

Tushie-Montgomery Associates, Inc. (called "TMI" by the parties) has taken an interlocutory appeal from a ruling by the district court in a suit in which an Indian tribe (and its casino subsidiary, but we can ignore this detail) seeks to void its contract with TMI. The contract was for architectural services in connection with a casino that the

tribe wanted built. After TMI had rendered substantial services and received a partial payment of $150,000, the leadership of the tribe changed and the new leadership repudiated the contract. The leaders claimed that the contract was illegal because it had not been approved by the Bureau of Indian Affairs. The contract contained an arbitration clause, which TMI, claiming to be owed in excess of $400,000 under the contract (in addition to the $150,000 that it had already received), invoked. The tribe refused to participate in arbitration and instead brought this suit, claiming not only that the contract was void but also that the tribe had not waived its sovereign immunity from suit and therefore could not be forced to arbitrate the dispute, and seeking the return of the $150,-000. The arbitration went forward without the tribe's participation and resulted in an award of more than $500,000 to TMI, which brought an action in state court to confirm the award. That action has been stayed pending the outcome of the present suit.

The district court granted partial summary judgment for the tribe, ruling that the tribe had not waived its sovereign immunity either in the arbitration clause or by bringing this suit and therefore could not be forced to arbitrate its dispute with TMI. The court then certified this ruling for an immediate appeal under 28 U.S.C. § 1292(b), and a panel of this court accepted the appeal.

■ There is an initial question whether the appeal is within the scope of section 1292(b), which is limited to orders that involve "a controlling question of law as to which there is substantial ground for difference of opinion and ... [from which] an immediate appeal ... may materially advance the ultimate termination of the litigation." Although the motions panel decided to accept the appeal, the merits panel is entitled to reexamine the decision of the motions panel. *In re Healthcare Compare Corp. Securities Litigation,* 75 F.3d 276, 279 (7th Cir.1996); *Johnson v. Burken,* 930 F.2d 1202, 1205 (7th Cir.1991). The clearest case for the exercise of this power of reexamination is where circumstances emerging after the motions panel ruled show that the appeal should not have been accepted.

■ There is no doubt that the district judge's ruling barring judicial enforcement of the contract involves a question of law as to which there is a substantial ground for a difference of opinion. But there is doubt whether the question is "controlling" and whether an immediate appeal "may materially advance the ultimate termination of the litigation." In its opening brief in this court TMI asserts, albeit only in a one-sentence footnote, that there is an additional ground for finding a waiver of sovereign immunity apart from the two grounds that it argued unsuccessfully to the district court, namely that the tribe explicitly consented to be sued in a provision in its tribal charter. If so, the decision of this appeal may not affect the course of the litigation in the district court, and in that event it would be difficult to see how the question of law presented by the appeal could be "controlling." Since this problem first surfaced in TMI's brief, filed after the motions panel accepted the appeal, it constitutes a changed circumstance, justifying our reexamining the motions panel's decision.

The company's additional ground for a waiver of sovereign immunity is, however, plainly waived in this court by having been presented in the form of a short sentence asserting the ground purely as a conclusion, without any effort to support it. E.g., *United States v. White,* 879 F.2d 1509, 1513 (7th Cir.1989); *Bonds v. Coca-Cola Co.,* 806 F.2d 1324, 1328 (7th Cir.1986). And it was waived in the district court by TMI's motion to certify the district judge's ruling on sovereign immunity for immediate appeal under section 1292(b). That motion represented that the question addressed by the court's ruling was indeed a controlling question of law, rather than merely a ruling on an alternative ground, a ruling therefore that might have no effect on the further course of the litigation. If TMI really thought it had another ground for resisting sovereign immunity (there is no indication that it did), it should have presented that ground to the district court, rather than engaging in salami tactics.

■ Even if TMI could still argue in the district court its other ground for waiving

sovereign immunity, this would not mean that the appeal does not present a "controlling" question of law. The cases do not interpret the term literally. A question of law may be deemed "controlling" if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so. *Johnson v. Burken, supra,* 930 F.2d at 1205–06, 16 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, *Federal Practice and Procedure* § 3930, pp. 159–60 and n. 12 (1977). If TMI succeeds in this appeal, the issue of sovereign immunity will be removed from the case, and it is the issue that is keeping the case from being decided on the basis of the arbitration award.

Can the appeal materially advance the litigation? It might seem that having accepted the defense of sovereign immunity, the district court was within shouting distance of entering a final judgment for the tribe. Not so. All the defense of sovereign immunity does is prevent *TMI* from going to court, either to enforce the arbitration award or otherwise to obtain the money that it claims is owed to it by the tribe under the contract. The tribe wants more than not to be sued. It wants its $150,000 back. To get it back, it must rescind the contract, and to do this it must prove that the contract is illegal. If it has no right to rescind the contract, it has no right to get back the partial payment that it made pursuant to the contract.

It might seem that this issue will have to be determined however the present appeal is decided. Not necessarily. If the tribe waived its sovereign immunity from suit, it may well be bound by the arbitration, which implicitly but unmistakably, by awarding TMI contract damages, determined that the contract was enforceable. If so, and if TMI wins this appeal, the case will be over without the district court's having to try the issue of the contract's validity.

 The appeal is within our jurisdiction, and we can proceed to the merits. TMI's principal ground for arguing that the tribe waived its sovereign immunity is the arbitration clause itself, which after stating that "claims, disputes or other matters" arising out of or related to the contract "shall be subject to and decided by arbitration in accordance with the [rules] ... of the American Arbitration Association," adds that the agreement to arbitrate "shall be specifically enforceable in accordance with applicable law in any court having jurisdiction" and that "judgment may be entered upon [the arbitration award] in accordance with applicable law in any court having jurisdiction thereof." There is nothing ambiguous about this language. The tribe agrees to submit disputes arising under the contract to arbitration, to be bound by the arbitration award, and to have its submission and the award enforced in a court of law. To agree to be sued is to waive any immunity one might have from being sued. Although the arbitration clause is contained in a contract that the tribe contends is illegal, the tribe rightly does not argue that the illegality of the contract infects the arbitration clause. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402, 87 S.Ct. 1801, 1805, 18 L.Ed.2d 1270 (1967); *Hammes v. AAMCO Transmissions, Inc.,* 33 F.3d 774, 783 (7th Cir.1994); *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.,* 1 F.3d 639, 641–43 (7th Cir.1993).

Doubt about the efficacy of the tribe's waiver arises only because of statements in a number of judicial opinions that waivers or other overrides of tribal sovereign immunity must be explicit to be effective. These statements are found in two distinct classes of case. In one, illustrated by *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), the issue is whether Congress has curtailed tribal rights; in these cases the requirement of a clear statement serves to protect tribal prerogatives. In the other class of case, illustrated by contract cases such as the present one, the issue is whether the tribe itself has waived one of its rights. Here the only purpose that a requirement of a clear statement could serve would be the admittedly, perhaps archaically, paternalistic purpose of protecting the tribe against being tricked by a contractor into surrendering a valuable right for insufficient consideration. We do not find this or any other purpose articulated in the cases, and this leads us to doubt whether there really is a requirement that a

tribe's waiver of its sovereign immunity be explicit, especially since the harder it is for a tribe to waive its sovereign immunity the harder it is for it to make advantageous business transactions. Amelia A. Fogleman, Note, "Sovereign Immunity of Indian Tribes: A Proposal for Statutory Waiver for Tribal Businesses," 79 *Va.L.Rev.* 1345, 1364–65 (1993).

■ But supposing there is such a requirement, we must ask whether the language of the arbitration clause might have hoodwinked an unsophisticated Indian negotiator into giving up the tribe's immunity from suit without realizing that he was doing so. We think this an extremely implausible, as well as condescending, suggestion. The arbitration clause could not be much clearer. It says that if there is a dispute under the contract it must be submitted to arbitration and that the arbitrator's decision is final and is enforceable in court. No one reading this clause could doubt that the effect was to make the tribe suable. The waiver is at least as perspicuous as the statement—perhaps the only statement—that would satisfy the tribe's current lawyer as constituting an explicit waiver of sovereign immunity: "The tribe will not assert the defense of sovereign immunity if sued for breach of contract." The term "sovereign immunity" is a technical legal term, and anyone who knows what it means can also understand the arbitration clause. The waiver in this case is implicit rather than explicit only if a waiver of sovereign immunity, to be deemed explicit, must use the words "sovereign immunity." No case has ever held that. The examples are not limited to Indian law. When states or the federal government waive sovereign immunity, as in the Federal Tort Claims Act or the Tucker Act, they do not say they are waiving "sovereign immunity"; they create a right to sue, just as in the arbitration clause here. See, e.g., 28 U.S.C. §§ 1491, 2674. These waivers are effective, even though the sovereign immunity of states and the federal government, like that of Indian tribes though presumably for different reasons, may not be waived by implication. *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969); *United States v.*

*Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980).

No appellate decision, to our knowledge, has ever rejected a waiver of sovereign immunity that was as clear as this one. The closest to doing so that we have found is *American Indian Agricultural Credit Consortium, Inc. v. Standing Rock Sioux Tribe,* 780 F.2d 1374, 1379–81 (8th Cir.1985). The tribe signed a promissory note that mentioned "rights and remedies provided by law," authorized the promisee to recover its attorney's fees in collecting the note, and even contained a choice of law clause. From all this, consent to be sued could readily be inferred, but it was not explicit, because the note did not spell out how rights were to be enforced and remedies obtained. The reader would have had to know or look up some law. The contract in this case specified arbitral and judicial fora for enforcement of the rights conferred by the contract. Although the *Credit Consortium* case is distinguishable, we do not mean to suggest that we agree with it.

We acknowledge that the line between explicit and implicit waivers is unclear. This is shown by a recent pair of cases that reached opposite results on identical facts. *Rosebud Sioux Tribe v. Val–U Construction Co. of South Dakota, Inc.,* 50 F.3d 560 (8th Cir. 1995); *Pan American Co. v. Sycuan Band of Mission Indians,* 884 F.2d 416 (9th Cir. 1989). In both cases the Indian tribe agreed to arbitrate contractual disputes in accordance with the rules of the American Arbitration Association. There was no explicit mention of court actions but the rules themselves provide for judicial enforcement of arbitration awards. The Eighth Circuit thought this an explicit waiver of the tribe's sovereign immunity from suit; the Ninth Circuit thought it merely implicit, and therefore declined to enforce it. We need not take sides. For here the right to sue is conferred in so many words, rather than by incorporation through a reference to the rules of the arbitration association. In the other cases, as also in the *Credit Consortium* case, a further inference had to be drawn in order to connect the contract language to the actuality of litigation to enforce it. Not here.

We need not consider whether by bringing this suit, rather than merely defending TMI's state court suit to confirm the arbitration award, the tribe waived its sovereign immunity. See generally *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1244–46 (8th Cir.1995). It waived it in the arbitration clause. The order granting partial summary judgment to the tribe is therefore

REVERSED.