**In re BRIDGESTONE/FIRESTONE, INC., TIRES PRODUCTS LIABILITY LITIGATION.**

No. IP 00–9373–C–B/S.
MDL No. 1373.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 15, 2002.

Don Barrett, Barrett Law Office PA, Lexington, MS, Victor Manuel Diaz, Jr., Podhurst, Orseck, Josefsberg & Eaton, Miami, FL, Mike Eidson, Colson Hicks Eidson, Coral Gables, FL, Irwin B. Levin, Cohen & Malad, William E. Winingham, Wilson, Kehoe & Winingham, Indianapolis, IN, for Plaintiffs.

John H. Beisner, O'Melveny & Myers, LLP, Washington, DC, Daniel P. Byron, Bingham McHale, LLP, Indianapolis, IN, Mark Herrmann, Jones, Day, Reavis & Pogue, Thomas S. Kilbane, Squire, Sanders & Dempsey, LLP, Cleveland, OH, Mark Merkle, Krieg Devault, LLP, Randall Riggs, Locke Reynolds, LLP, Indianapolis, IN, Colin P. Smith, Holland & Knight, LLP, Chicago, IL, Thomas G.

Stayton, Baker & Daniels, Indianapolis, IN, for Defendants.

### *ORDER DENYING DEFENDANTS' MOTION TO CERTIFY THE COURT'S FORUM NON CONVENIENS ORDER FOR INTERLOCUTORY APPELLATE REVIEW*

BARKER, District Judge.

On December 21, 2000, Defendant Ford Motor Company ("Ford") filed motions to dismiss Venezuelan and Colombian personal injury and wrongful death cases on the ground of forum non conveniens. Defendant Bridgestone/Firestone North American Tire LLC (formerly known as Bridgestone/Firestone, Inc.) ("Firestone") filed similar motions on January 9, 2001. Discovery and additional briefing ensued. *See In re Bridgestone/Firestone, Inc., ATX, ATX II and Wilderness Tires Products Liability Litigation*, 131 F.Supp.2d 1027 (S.D.Ind.2001) (*"Firestone FNC Discovery "*). On March 25, 2002, we denied Defendants' motions for forum non conveniens dismissal. *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 190 F.Supp.2d 1125 (S.D.Ind.2002) (*"Firestone FNC"* or "March 25, 2002 Order"). Defendants now ask the Court to amend the March 25, 2002 Order to permit interlocutory review pursuant to 28 U.S.C. § 1292(b). For the reasons sets forth below, Defendants' motion is *DENIED*.

1. Section 1292(b) provides:

 When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it

### Criteria for Interlocutory Appellate Review

 Interlocutory review is governed by 28 U.S.C. § 1292(b). Under this provision, a district judge may certify for appellate review a non-final order not otherwise appealable under 28 U.S.C. § 1292 when certain criteria are met.[1] Following certification, the Court of Appeals, in its discretion, decides whether to accept the application for appeal. In *Ahrenholz v. Board of Trustees of the University of Illinois*, 219 F.3d 674, 675 (7th Cir.2000), the Seventh Circuit set forth its gloss on the statutory standards. For a district court to grant a section 1292(b) petition, "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation ... and the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed." *Id.* at 675–76 (emphasis in original). All five criteria must be satisfied.[2] *Id.* at 676. Also, in Seventh Circuit practice, specific issues, rather than an order as a whole, are formally certified for appeal. *See, e.g., Boim v. Quranic Literacy Institute and Holy Land Foundation for Relief and Development*, 291 F.3d 1000, 1007 (7th Cir.2002).[3]

 Defendants Ford and Firestone propose the following five issues for interlocutory appellate review:

 within ten days after the entry of the order . . .

2. No argument has been made that the request for certification is untimely so we need address only the remaining four requirements in our analysis.

3. However, once the order is before the appellate court, the entire opinion is open to review. *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 609 (7th Cir.2000) ("But an appeal under § 1292(b) brings up the whole certified order, rather than just the legal issue that led to certification.") (internal citation omitted).

(1) Whether the denial of *forum non conveniens*-based dismissal of these cases is consistent with relevant precedents holding that the United States is an inconvenient forum for products liability cases involving foreign accidents brought by foreign plaintiffs.

(2) Whether a foreign forum may be held to be unavailable solely because of plaintiffs' refusal to file suit in that forum, where the accidents occurred and in which plaintiffs reside.

(3) Whether treaties of friendship between the United States and Venezuela and Colombia require the Court to accord a greater level of deference to a foreign plaintiff who chooses to file suit in the United States.

(4) Whether the Court must analyze the *local* interests of the forum state in any trial, rather than the *general* interest of the United States as a whole.

(5) Whether Fed.R.Civ.P. 44.1 permits the Court to set aside expert submissions on foreign law questions on credibility grounds.

Defs.' Mot. at 3 (bold and italics in original). We address below whether any of these five questions meets the criteria for interlocutory appeal set forth in 28 U.S.C. § 1292(b). In doing so, we keep in mind that failure to satisfy even one requirement defeats the certification request. *See Ahrenholz,* 219 F.3d at 676.

### Agreement with Relevant Precedents

 Defendants' first proposed issue for review is not certifiable because it falls short of the first criterion set forth in the *Ahrenholz* restatement of section 1292(b).

Whether the decision reached in our March 25, 2002 Order is consistent with various forum non conveniens decisions concerning foreign accidents and foreign plaintiffs is not a question of law. Defendants' argument on this point is that "[a]t its most fundamental level, the Court's ruling runs contrary to a host of cases holding that the federal courts are not appropriate fora for the litigation of products liability cases brought by foreign plaintiffs involving accidents that occurred in foreign countries, even where plaintiffs contend that some ingredient in the alleged product defect occurred in the United States." Defs.' Memo. at 7–8. In short, Ford and Firestone object to the entire analysis of our forum non conveniens decision. However, as has been stated over and over again in the context of *this very litigation,* a forum non conveniens decision is inherently fact-sensitive. *Firestone FNC Discovery,* 131 F.Supp.2d at 1028 ("[T]he district court is accorded substantial flexibility in evaluating a forum non conveniens motion, and *each case turns on its facts.*") (quoting *Van Cauwenberghe v. Biard,* 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988)); *Firestone FNC,* 190 F.Supp.2d at 1148 n. 34 (also citing *Van Cauwenberghe* for proposition that each case turns on its facts).[4] Because every court deciding a motion to dismiss on the ground of forum non conveniens must address the facts of the case before it, the first issue proposed by Defendants is not suitable for interlocutory appeal.

### Unavailability of Venezuelan Forum

 The second proposed question for interlocutory review suffers from a similar failing. Defendants ask "[w]hether a for-

---

**4.** To Defendants' credit, once Plaintiff's Response pointed out the Seventh Circuit's narrow definition of "question of law" for purposes of evaluating a request for certification (which we will explore in greater detail below), Defendants apparently abandoned their argument that this broad issue is a question of law. *See* Defs.' Reply at 5–7.

eign forum may be held to be unavailable solely because of plaintiffs' refusal to file suit in that forum, where the accident occurred and in which plaintiffs reside." Defs.' Mot. at 3. In an effort to make this issue into a question of law, Ford and Firestone state that our decision denying the forum non conveniens motions "establishes [as] a principle of U.S. law that by filing an action in a U.S. court ..., a foreign plaintiff is indicating an unwillingness to litigate in his or her home forum that renders the forum unavailable." Defs.' Memo. at 12–13. This statement mischaracterizes our ruling.

■ To determine whether forum non conveniens dismissal is appropriate, we were charged with deciding whether Defendants met their burden of persuasion that "an adequate alternative forum is available to hear the *case*." *Kamel v. Hill–Rom Co., Inc.,* 108 F.3d 799, 802 (7th Cir.1997) (emphasis added); *see also Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 43–44 (3d Cir.1988). This standard is the only principle of *U.S.* law applicable to the availability determination in our ruling. To discover whether the disputes could be resolved elsewhere, we turned to Venezuelan law. The Court determined that Article 40(4) of the Venezuelan Statute on Private International Law permits jurisdiction over *cases* only when both parties expressly submit to jurisdiction in Venezuelan courts. *Firestone FNC,* 190 F.Supp.2d at 1131. Defendants bore the burden of demonstrating that Venezuelan courts could hear these cases, and they failed to meet it. We expressed, and we continue to express, no opinion on what the laws of other countries require with regard to a plaintiff's willingness to submit to the forum in order to establish jurisdiction over disputes.

■ What Ford and Firestone really dispute is the Court's determination of Venezuelan law. Defendants cannot dem-

onstrate that this determination meets the requirements of section 1292(b). The Seventh Circuit has a narrow understanding of "question of law" when considering requests for certification, and issues of Venezuelan law fall outside of the definition. A question of law in this situation is one that presents "an abstract legal issue" that can be "decide[d] quickly and cleanly without having to study the record." *Ahrenholz,* 219 F.3d at 676–77. For instance, a question of the meaning of a contract with no other evidence but the written contract is not a "pure" question of law, as required by section 1292(b). *Id.* at 676. Similarly, while a question of law in a formal sense, the meaning of a Venezuelan statute is like the meaning of a contract in that it cannot be decided without delving into the record. The content of foreign law is determined by a wide variety of evidence, including expert testimony. Fed.R.Civ.P. 44.1. The expert testimony on foreign law in this case is extensive (and independent sources on Venezuelan law are not readily available), so deciding this issue would not be "quick and clean" work.

Furthermore, Defendants cannot make a serious claim that permitting appeal on this issue would "materially advance the litigation." We must address "the significance of gains from reversal and the hardship on the parties in their particular circumstances" in determining whether to certify a question for interlocutory appeal. *Praxair, Inc. v. Hinshaw & Culbertson,* 1997 WL 662530, at *4 (N.D.Ill.1997). While our court and the transferor district courts would have our burdens significantly eased were our forum non conveniens decision to be reversed on appeal, the parties would face a different situation altogether. Ford and Firestone have argued, as they must, that if these cases were dismissed, then the courts of Venezuela would provide an adequate alternative forum for hearing these cases. Therefore, if

the Seventh Circuit decided that we had misinterpreted Venezuelan law and that the decision must be reversed on that basis, then the parties would be no closer to resolving their disputes.[5] They would still need to prepare for trial, only in Venezuelan, rather than in U.S., courts (and this after further delay and expense during consideration of the appeal). The Seventh Circuit's recent decision in *Sokaogon Gaming Enterprise Corp. v. Tushie–Montgomery Assocs., Inc.*, 86 F.3d 656 (7th Cir. 1996), illustrates an important distinction on this point. In *Sokaogon*, 86 F.3d at 659, the Seventh Circuit determined that deciding on interlocutory appeal whether an Indian tribe had waived its sovereign immunity would materially advance the litigation because arbitration had already taken place. If the tribe could be sued on the basis of the contract at issue, then the arbitration that had resolved the parties' contract dispute could well have been binding, thus ending the conflict, at least on a legal basis, between the two sides. Here, the core of the disagreement between the parties—whether Ford and Firestone are liable for the alleged personal injuries and wrongful deaths of the plaintiffs—must be resolved regardless of the forum non conveniens decision.[6]

## Level of Deference Accorded Plaintiffs' Forum Choice

■ Defendants propose a third question for interlocutory appeal: whether treaties of friendship between the United States and Venezuela and Colombia require the Court to accord a greater level of deference to a foreign plaintiff who chooses to file suit in the United States. As noted in our earlier decision, in the mid–19th century, the U.S. entered into treaties with Venezuela and Colombia (then New Granada) providing that the courts of both countries be "open and free" to the other's citizens on the same terms as the natives or citizens of the country in which they may be. *Firestone FNC*, 190 F.Supp.2d at 1136. On this basis, after considering both parties' arguments and numerous precedents, we determined that "Plaintiffs here are entitled to the same deference as U.S. citizens *in similar situations*, with the understanding that suing in a United States court is sometimes, although not always, less likely to be convenient when the

---

**5.** Phrasing the question in this manner indicates also that this question is not "controlling." The forum non conveniens inquiry is a two-step process. We found not only that the Venezuelan courts were not an available forum, but also that the balancing of interests favored trial in the United States. Reversal on the former question would not necessarily change the legal or practical outcome of our earlier decision. *See Johnson v. Burken,* 930 F.2d 1202, 1206 (7th Cir.1991) (question controlling only if it is "serious to the conduct of the litigation, either practically or legally").

**6.** Ford and Firestone argue, on the basis of *Gonzalez v. Naviera Neptuno A.A.,* 832 F.2d 876 (5th Cir.1987), that district courts should be hospitable to applications for interlocutory appeal when denying motions to dismiss on the ground of forum non conveniens. Defs.' Memo. at 7. We respectfully disagree with the conclusion reached in *Gonzalez. Gonzalez*

does not make the distinction that is important in *Sokaogon*—namely that reversal on interlocutory appeal would end the entire legal dispute between the parties. In *Gonzalez* and in our cases, the dispute between the parties would continue even if the Seventh Circuit were to determine that the cases should have been dismissed on the ground of forum non conveniens.

We are reluctant to rely on *Gonzalez* for two additional reasons. First, Defendants were unable to point to any cases following *Gonzalez* for the proposition that courts should be hospitable to interlocutory appeals of forum non conveniens motions. Second, the district court in *Gonzalez* denied the forum non conveniens motion without providing written reasons. *Gonzalez*, 832 F.2d at 877. In contrast, our earlier opinion demonstrates the thorough consideration we gave to Defendants' motion. *Firestone FNC*, 190 F.Supp.2d 1125.

shared situation is residence in a foreign country." *Id.* at 1137 (emphasis in original). Accordingly, "the balance of private and public interest factors must do more than merely 'point towards' further proceedings in Venezuela and Colombia." *Id.* Ford and Firestone argue that we paid too much deference to the choice of forum made by Plaintiffs in these cases and that the "substantial ground for difference of opinion" on this issue makes the decision ripe for immediate appellate review. We do not agree.

Defendants look to cases setting a lax standard for demonstrating that a question of law is contestable. In the absence of controlling law on what constitutes a substantial ground for difference of opinion, we find that the cases relied upon by Ford and Firestone are not as persuasive as those revealed by the Court's research. Defendants argue that this criteria is satisfied whenever a "reasonable appellate judge could vote for reversal of the challenged order." Defs.' Memo. at 5 (quoting *Stong v. Bucyrus–Erie Co.,* 476 F.Supp. 224, 225 (E.D.Wis.1979)). However, for any difficult question of law, there are at least two supportable positions, one of which could be adopted by the district court and the other of which could be embraced by an appellate judge. On the basis of the standard advocated by Defendants, almost any question of law would meet the standard of being contestable. This result is contrary to the rule that interlocutory appeal should not be readily available. *See Ahrenholz,* 219 F.3d at 675 (only six of 31 petitions for interlocutory appeal accepted between early 1999 and mid–2000); *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 474–75, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) ("[T]he appellant still has the burden of persuading the court of appeals that *exceptional circumstances* justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.") (emphasis added) (internal quotations omitted). For this reason, we cannot rely on the standard set forth in *Stong.* Indeed, a number of persuasive precedents reach the same conclusion as we do. *See, e.g. Praxair,* 1997 WL 662530, at *2 ("[I]nterlocutory review should not be allowed merely to provide a review of difficult rulings in hard cases."); *Kirkland & Ellis v. CMI Corp.,* 1996 WL 674072, at *4 (N.D.Ill.1996) (same) (quoting *McCann v. Communications Design Corp.,* 775 F.Supp. 1506, 1534 (D.Conn. 1991)).

Defendants also suggest that there is substantial ground for difference of opinion whenever "there is no Seventh Circuit or Supreme Court case that clearly controls the outcome of the ... issue in this case." Defs.' Memo. at 5 (quoting *Hodgkins v. Goldsmith,* 2000 WL 892964, at *26 (S.D.Ind.2000)). However, "the mere lack of judicial precedent on the issue does not establish substantial ground for difference of opinion." *In re Demert & Dougherty, Inc.,* 2001 WL 1539063, at *6 (N.D.Ill. 2001). Indeed, if interlocutory appeals were permissible whenever there is merely the lack of judicial precedent, the effect would be no more than to obtain an appellate stamp of approval on the ruling(s) by the trial court.

Instead, we examine "the strength of the arguments in opposition to the challenged ruling." *Praxair,* 1997 WL 662530, at *2.[7] This analysis includes examining whether other courts have adopted conflicting positions regarding the issue of law

---

7. The Court in *Hodgkins,* in a section of the discussion not mentioned by Defendants, implicitly recognized the need to evaluate the strength of the opposing position even when there is an absence of controlling precedent. *Hodgkins,* 2000 WL 892964, at *26 (noting that defendants raised "very substantial arguments" in support of their position).

proposed for certification. *Carlson v. Brandt*, 1997 WL 534500, at *6 (N.D.Ill. 1997) ("[I]t is beyond dispute that interlocutory appeal is unjustified, inefficient, and unnecessary when the movant has not set forth substantial conflicting decisions regarding the claimed controlling issue of law.") (internal quotations omitted); *see also White v. Nix*, 43 F.3d 374, 378 (8th Cir.1994) (requiring "a sufficient number of conflicting and contradictory opinions" to justify § 1292(b) certification). In support of their forum non conveniens motions and in support of their motion for interlocutory appeal, Defendants cite a number of cases for the proposition that treaty nationals residing in their home countries are entitled to little or no deference in their choice of forum and that, therefore, the Court erred in the forum non conveniens determination. However, Ford and Firestone misstate these precedents. They do not establish that treaty nationals are entitled to a level of deference different from that which we accorded Plaintiffs before us.

For example, Ford and Firestone read *Pain v. United Technologies Corp.*, 637 F.2d 775 (D.C.Cir.1980) to reject the plaintiffs' argument that they were entitled to a higher presumption of convenience because of their status as treaty nationals. Defs.' Memo. at 16. Rather, the appellate court focused its analysis on whether

*American* citizenship (and residency for one of the many plaintiffs) entitled the plaintiffs to "particularly great weight" in the balancing of conveniences and answered the question in the negative. *Pain*, 637 F.2d at 795–96. While the *Pain* court mentioned in a summary of the parties' positions that the plaintiffs raised an argument based on their status as treaty nationals, its ruling was not based on this issue *Id.* at 795–96, 799. As such, *Pain* does not establish that there is substantial ground for difference of opinion on this point.[8] Contrary to Defendants' argument, *In re Dow Corning Corp.*, 255 B.R. 445, 525–26 (E.D.Mich.2000) establishes only that treaties regarding reciprocal access to courts "do not *preclude* a court from dismissing a foreign claim based on substantive law such as the forum non conveniens doctrine." (emphasis added). It does not establish that the forum choices of treaty nationals are entitled to little or no deference. *Id.* Finally, the district court in *Vasquez v. Bridgestone/Firestone*, 192 F.Supp.2d 715, 721 (E.D.Tex.2001), based its decision on Texas law. Because the district court did not examine the impact of the treaties at issue in light of *federal* precedents like *Blanco v. Banco Industrial de Venezuela*, 997 F.2d 974, 981 (2d Cir.1993), and *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 69 n. 2 (2d Cir.2001) (which admittedly had

---

**8.** The *Pain* court also reasoned that American citizenship is an "inadequate proxy" for American residence which is "only one indicator of how *inconvenient* it may be for the plaintiff to litigate his case in a foreign forum." *Pain*, 637 F.2d at 797 (emphasis added). In its understanding of the core principles at issue in the forum non conveniens analysis, *Pain* and our forum non conveniens decision are in agreement—"the main point of our analysis [is] convenience." *Firestone FNC*, 190 F.Supp.2d at 1137; *Pain*, 637 F.2d at 775.

Furthermore, *Pain* is not clearly contrary to our decision to apply *some* weight to the

forum choice of a non-resident (whether a U.S. national or a treaty national). The decision in *Pain* uses language like "extra weight" and "special weight." *Id.* at 795–96 & n. 141. We did not accord the Plaintiffs' forum choices in our cases "particularly great weight," *cf. Pain*, 637 F.2d at 795–96. Instead, we struck a middle ground between applying no deference at all and requiring that the factors "clearly point towards" trial in the alternative forum. *Firestone FNC*, 190 F.Supp.2d at 1136–37 (balancing must do more than "merely 'point towards' further proceedings in Venezuela and Colombia").

not been decided yet), we do not find that reliance on *Vasquez* strengthens the force of Defendants' argument. In sum, Ford and Firestone fail to establish that the amount of deference paid to Plaintiffs' forum choice is subject to substantial ground for difference of opinion.

**Forum Interests or U.S. Interests**

 The fourth question Ford and Firestone propose for interlocutory appellate review concerns the standard by which we judged the public interest factors that are part of the forum non conveniens balancing of interests. Defendants contend that the "Court must analyze the *local* interest of the forum state in any trial, rather than the *general* interest of the United States as a whole." Defs.' Mot. at 3 (bold and italics in original). Ford and Firestone are correct to note that, in our decision, we examined the interests of the United States in these cases rather than the particular interests of the Southern District of Florida, the Central District of California, or any of the other districts from which these cases were transferred. *See Firestone FNC,* 190 F.Supp.2d at 1145–46, 1154–55. However, this issue cannot be certified for interlocutory appeal. Regardless of whether the question meets the other criteria required by § 1292(b), Defendants cannot demonstrate that this issue is "controlling."

In the Seventh Circuit, "[a] question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming,* 86 F.3d at 659. "Controlling" is to be interpreted and applied with flexibility, such that a question is "controlling" if it is "serious to the conduct of the litigation, either practically or legally." *Johnson,* 930 F.2d at 1206. Hence, a decision on the question of law from the appellate court contrary to the path taken by the district court need "not lead to reversal on appeal [to be

controlling], if interlocutory reversal might save time for the district court, and time and expense for the litigants." *Id.* Here, even if we limited our analysis of local interest to the specific jurisdictions from which the cases were transferred and determined that these jurisdictions had only slight interest in the litigation, dismissal on the ground of forum non conveniens would not be warranted. The district courts and the litigants would continue to face trial of their disputes in the various transferor jurisdictions, and the time and expense necessary to resolve their disagreements would remain the same.

 This is so because so many considerations, not only the interests of the local forum, influence the forum non conveniens determination. To rule on a forum non conveniens motion, a court must first determine whether there is an adequate alternative forum. *Kamel,* 108 F.3d at 802. Then, no fewer than five public interest factors and a number of private interest factors must be considered and balanced against each other. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The primary focus of balancing the public and private interests is convenience. "If central emphasis were placed on any one factor [such as interests of the local forum], the forum non conveniens doctrine would lose much of the flexibility that makes it so valuable." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249–50, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Because of this focus on flexibility, it is unlikely that a dispute about any one factor would influence the balancing enough to merit interlocutory appeal.

Indeed, a look at our decision concerning the Colombian cases illustrates that a change in the standard for considering one or even two factors is not "controlling" of the forum non conveniens decision before us or of the conduct of the litigation in

general. We found that both Colombia and the United States have legitimate interests in these cases and that this issue "does not weigh heavily in favor of Defendants' position on forum non conveniens." *Firestone FNC*, 190 F.Supp.2d at 1146. On the whole, we determined that the public interest factors "suggest that Colombia might be a slightly more convenient forum," but that the public interest factors do not point towards trial in the alternative forum. *Id.* at 1148. Balancing the public interest factors against the weighty private interest factors we examined, we concluded that "[t]he public interest factors simply do not outweigh the private interests of the parties in retaining jurisdiction in the United States." *Id.* Even assuming, as the logic of Defendants' argument would require, that the Southern District of Florida and the other transferor jurisdictions have no interest in these cases (or at least considerably less interest than the U.S. as a whole), we then also would need to find, in order for the decision to be controlling, that the public interest factors do point towards in trial Colombia *and* that the factors counterbalance the private interest factors that we found weighed against Defendants' motion. The various other interests we considered in our earlier opinion simply do not permit these findings, and the question of law proposed by Ford and Firestone does not qualify as "controlling" as required by § 1292(b).[9]

## Treatment of Expert Testimony

■ Defendants propose one final question for interlocutory appellate review: whether Fed.R.Civ.P. 44.1 permits the Court to set aside expert submissions on foreign law questions on credibility grounds. In our March 25, 2002 Order, Mr. Rengel opined that Venezuelans may sue non-resident defendants in Venezuelan courts for conduct related to events occurring in Venezuela. *Firestone FNC*, 190 F.Supp.2d at 1129 (citing Rengel Aff. ¶ 9). As expressed at that time, we were reluctant to rely on Mr. Rengel's testimony given the fact that he personally handles litigation for Ford in Venezuela and may be involved in the very cases for which he offers his expert opinion. *Id.* at 1131–32 & n. 5. It is the voicing of this concern about Mr. Rengel's reliability that lead Ford and Firestone to contend that we impermissibly rejected their expert testimony.

One problem with Defendants' proposed question of law is that it is not controlling. We had multiple reasons for rejecting Mr. Rengel's determination concerning the jurisdiction of Venezuelan courts. Mr. Rengel's opinion was merely conclusory, and he failed to address on reply the contradictory interpretation of Venezuelan jurisdiction presented by Plaintiffs' expert, Tatiana B. deMaekelt. *Firestone FNC*, 190 F.Supp.2d at 1131. Given these shortcomings, we would have rejected Mr. Rengel's affidavit testimony even without the suggestion of a conflict of interest. As such, Defendants fail to demonstrate that the

---

**9.** The question of the proper scope of local interest is not controlling in the Venezuelan cases either. First, we found that for these cases, Defendants did not meet their threshold burden of demonstrating the availability of an alternative forum. *Firestone FNC*, 190 F.Supp.2d at 1132. Therefore, even if we had reason to re-weigh the public and private interest factors, the motion for forum non conveniens could not be granted. In addition, we found that Venezuelan interest in

these cases was not strong, considering that the National Director of the Department of Technical Transportation Surveillance, Colonel Jose Rafael Quero Vallecillos, submitted an affidavit testifying that his department has a special interest in the litigation of the accidents in United States courts. *Id.* at 1154. A finding that neither Venezuela nor the transferor courts have a strong interest in this litigation would not tilt the public interest factors toward dismissing the cases.

question they raise is "quite likely" to affect the further course of the litigation, as required by *Sokaogon Gaming*, 86 F.3d at 659.

Furthermore, Ford and Firestone misconstrue the only case they cite in support of their argument that we impermissibly rejected Mr. Rengel's testimony. Specifically, Defendants quote from a Second Circuit case as follows:

> Determination of a foreign country's law is an issue of law. Even though the District Court heard live testimony from experts from both sides, that Court's opportunity to assess the witnesses' demeanor provides no basis for a reviewing court to defer to the trier's ruling on the content of foreign law. In cases of this sort, *it is not the credibility of the experts that is at issue, it is the persuasive force of the opinions they expressed.*

*Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 92 (2d Cir.1998) (citations omitted) (quoted, with emphasis added, in Defs.' Memo. at 18). From this case, they argue that we should not have taken into account Mr. Rengel's bias because he was opining on a question of law.

We think that Defendants emphasize the wrong sentence of this excerpt. If the second sentence is emphasized instead of the third sentence, it appears that the Second Circuit was concerned with the immediate task before it—the extent to which it as an appellate court needed to conduct its own review of the content of foreign law. *Itar–Tass*, 153 F.3d at 92 ("Even though the District Court heard live testimony from experts form both sides, that Court's opportunity to assess the witnesses' demeanor *provides no basis for a reviewing court to defer to the trier's ruling* on the content of foreign law.") (emphasis added). Under this reading, the appellate court in *Itar–Tass* focused on determining the amount of deference the trial court's ruling on foreign law deserved on appeal, not on whether the information considered by the district court, i.e., the witnesses' demeanor, should have been considered in the first place. This understanding of *Itar–Tass* permits the procedure for evaluating expert testimony that we followed in our decision.[10] As such, *Itar–Tass* is not the conflicting decision Defendants need to demonstrate a substantial ground for difference of opinion. *See Carlson*, 1997 WL 534500, at *6 ( "[I]t is beyond dispute that interlocutory appeal is unjustified, inefficient, and unnecessary when the movant has not set forth substantial conflicting decisions regard the claimed controlling issue of law.").

### Conclusion

As we have explained above, Defendants have not proposed for certification any questions of law meeting all of the requirements set forth in § 1292(b). Defendants' Motion to Certify is therefore *DENIED*.

---

**10.** It is also the interpretation accepted by Judge Scheindlin in *Norwest Financial, Inc. v. Fernandez*, 86 F.Supp.2d 212, 227–29 (S.D.N.Y.2000), a case that turned on a point of Argentinian law. During cross examination in *Norwest*, it was revealed that the defendants' expert on Argentinian law, Dr. Rodriguez Mancini, had a potentially large conflict of interest because he also represented the defendants in related litigation in Argentina. *Id.* at 228. In evaluating the experts' testimony, the district court considered Dr. Mancini's testimony but placed less weight on it, due to the potential bias. *Id.* at 228 n. 15. Judge Scheindlin noted that while Rule 44.1 sets forth flexible provisions for determining issues relating to the law of foreign nations, "[she] could not help but consider Dr. Rodgriuez Mancini's serious infirmities when deciding what weight to give his testimony." *Id.*