**IOWA MANAGEMENT & CONSULTANTS, INC., Appellee,**

v.

**SAC & FOX TRIBE OF THE MISSISSIPPI IN IOWA, Appellant.**

No. 01–0395.

Supreme Court of Iowa.

Jan. 23, 2003.

Steven F. Olson and Brad S. Jolly of Bluedog, Olson & Small, P.L.L.P., Minneapolis, Minnesota, and Roger Schoell of Grimes, Buck, Schoell & Beach, Marshalltown, for appellant.

Fred L. Dorr of Wasker, Dorr, Wimmer & Marcouiller, P.C., Des Moines, for appellee.

CARTER, Justice.

The Sac and Fox Tribe of the Mississippi in Iowa (the tribe) appeals from an order compelling arbitration of a consulting firm's claims for compensation under a written agreement with the tribe. The appellee is Iowa Management and Consultants, Inc. (consulting firm). The district court ordered that arbitration of the claim should proceed. The tribe urges on appeal that the district court lacked subject matter jurisdiction to hear the matter and, in the alternative, that the contract upon which the consulting firm's claims are based is void under federal law.

After reviewing the record and considering the arguments presented, we conclude that the district court did have subject matter jurisdiction to adjudicate both the petition to compel arbitration and the tribe's federal-law defenses thereto. With respect to the claimed invalidity of the contract under federal law, including the arbitration provision contained therein, we find that the district court improperly resolved that issue on a motion without allowing the tribe to present evidence concerning whether the agreement was, as it alleges, a prohibited management contract. The judgment of the district court is affirmed in part and reversed in part. The case is remanded to the district court for a determination of the tribe's federal-law claim that the contract is void under federal statutes.

The tribe is a federally recognized Indian Tribe located near Tama, Iowa. It engages in gaming activity on its lands in accordance with the Indian Gaming Regulatory Act, 25 U.S.C. § 2701. The consulting firm is an Iowa corporation, which entered into a contract with the tribe in December 1996. The agreement was later revised, amended, and re-executed on October 14, 1997. Under the agreement, the consulting firm was to provide "technical assistance, training, and advice" to the tribe on "matters relating to the operation and business activities ... including, but not limited to, organization and administration, planning and development, marketing, customer relations and any other matters requested." The agreement, as amended, expressly disclaims any functions of the consulting firm with respect to casino management. The consulting firm was initially to receive compensation of $150,000 per month. After the consulting firm had performed services for approximately eleven months, the Tribal Council notified the firm that the agreement was suspended, and the firm's compensation was terminated.

The contract provided:

## VI. TERMINATION AND REMEDIES

. . . .

B. *Remedies for Breach/Dispute Resolution*

1. All disputes, controversies or claims arising out of or relating to this Consulting Agreement or any other agreement between the parties relating to the Consulting Agreement executed contemporaneously with or subsequent to this Agreement, and the Ordinance or any rules, regulations, actions or decisions relating thereto or in general by or on behalf of the Tribe, the Tribal Council or the Tribal Gaming Commission shall be settled exclusively by binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association, the Federal Arbitration Act and the following procedures:

. . . .

3. The Tribe expressly waives sovereign immunity for the purpose of permitting or compelling arbitration as provided in this Agreement and to be sued in any court of competent jurisdiction by Consultant for the purpose of compelling arbitration or enforcing any arbitration award or judgment arising out of this Consulting Agreement or any other agreement between the parties relating to the consulting services executed contemporaneously with or subsequent to this Agreement.

... [T]he Tribe hereby waives any right it may possess to require the Consultant to exhaust tribal remedies or appear before any tribal court that may be established by the Tribe.

The consulting firm contended that the tribe's suspension of the agreement was a breach of contract and filed a demand for arbitration based on the arbitration clause in the agreement. When the tribe did not acquiesce in this request, the consulting firm commenced an action in the United States District Court for the Northern District of Iowa, seeking an order compelling arbitration. That action was dismissed for lack of federal jurisdiction. The dismissal order of the federal district court was affirmed. *Iowa Mgmt. & Consultants, Inc. v. N. Sac & Fox Tribe of the Mississippi in Iowa,* 207 F.3d 488, 489 (8th Cir.2000).

In upholding the district court's order that it lacked subject matter jurisdiction, the federal court of appeals concluded that the claim for arbitration under a contract with the tribe was a state-law claim that

the federal courts had no jurisdiction to resolve, notwithstanding the fact that it invited federal law defenses. *Id.* The consulting firm then commenced the present action in the Iowa District Court, seeking to compel arbitration under the agreement. The district court rejected the tribe's challenge to the subject matter jurisdiction of the state court. Without hearing any evidence on the matter, the court also rejected the tribe's claim that under federal law the entire agreement, including the arbitration clause, was invalid.

### I. *The Issues.*

The tribe's primary argument on appeal is stated as follows in its written argument:

> The district court erred when it concluded it could determine the scope of the Gaming Commission's jurisdiction to declare whether [the consultant's] contract was void. The district court compounded its error when it asserted jurisdiction to determine the validity of a contract involving Indian gaming services. The district court's order contravenes Congress's express intent when adopting the Indian Gaming Regulation Act, violates federal law laid down by the United States Circuit Court for the Eighth Circuit and the United States Supreme Court, and is contrary to the decisions of those state courts addressing the issue of the preemptive effect of IGRA.

In the alternative, it urges that, if the district court did properly assume jurisdiction to determine the validity of the agreement, the agreement is void under federal law.

### II. *Whether the District Court's Order Was Final.*

■ We must first consider the consulting firm's contention that the district court's order was not a final judgment from which an appeal may be taken. This issue turns on whether any further action remained to be taken in the proceeding before the district court following the entry of the order. *Deerfield Constr. Co. v. Crisman Corp.*, 616 N.W.2d 630, 632 (Iowa 2000). We are satisfied that the order from which the present appeal has been taken finally resolved all issues in the proceeding before the court. Although there is always the possibility of further litigation between the parties to this dispute, that must come in a new proceeding. The district court did not retain jurisdiction in the case at issue here.

### III. *The Jurisdictional Argument.*

In considering the tribe's argument, we begin with the federal court of appeals' characterization of this dispute in its opinion rejecting federal court jurisdiction. That court viewed the controversy as "a routine contract action involving the Tribe, a matter over which federal courts do not have jurisdiction." *Iowa Mgmt. & Consultants*, 207 F.3d at 489. The consulting firm carefully avoided changing the character of the litigation when refiling the claim in state court.

■ The arbitration agreement provided that it may be enforced in "any court of competent jurisdiction." Consequently, we are convinced that, after the federal appeals court ruling rejecting federal court jurisdiction, the consulting firm was left with no place to go other than a state court of general jurisdiction. If we conclude that the Iowa court had jurisdiction to compel arbitration of this dispute, which we do, then the consideration of the tribe's federal-law challenge to the entire agreement (which contention was tendered by the tribe in state court) had to be adjudicated in that forum in order to resolve the entire controversy. The alternative would have been to simply ignore those defenses,

a result we are certain the tribe does not advocate.

The Supreme Court has recognized that an Indian tribe is not subject to suit in a state court, even for breach of contract, unless Congress has authorized the suit or the tribe has waived its immunity. *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 754, 118 S.Ct. 1700, 1702–03, 140 L.Ed.2d 981, 985 (1998). But, it has also recognized that a tribe may waive this immunity from suit in state court by making a contract that expressly agrees to arbitrate disputes and to permit the enforcement of arbitrable awards in any court of competent jurisdiction. *C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 420, 121 S.Ct. 1589, 1595, 149 L.Ed.2d 623, 632 (2001); *accord Sokaogon Gaming Enters. Corp. v. Tushie–Montgomery Assocs., Inc.*, 86 F.3d 656, 661 (7th Cir.1996) (same).

In *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412 (8th Cir.1996), the federal court of appeals was faced with an effort to compel arbitration of a contract dispute with an Indian tribe. That action was brought in federal court. In discussing the arbitration clause, the court stated:

> The Tribes have clearly and unequivocally waived their sovereign immunity under the contract and the parties have chosen binding arbitration as a dispute resolution procedure.... The problem is that the Tribes are challenging the legal validity of the contract itself, specifically the actions of its former Chairman leading to the execution of the contract. This challenge to the document itself therefore calls into question all provisions contained therein (including provisions relating to arbitration, sovereign

immunity, and federal district court jurisdiction).

*Bruce H. Lien*, 93 F.3d at 1417. The court held that, if a challenge to the validity of the entire agreement was successful, this would nullify the provisions for mandatory arbitration and waiver of sovereign immunity. The court, in determining the proper forum to adjudicate the validity of the agreement, chose the tribal court subject to review by the federal district court for North Dakota. *Id.*

It is somewhat puzzling why the federal court had jurisdiction to consider the same type of controversy in the *Bruce H. Lien* case that it rejected for want of jurisdiction in the federal litigation of the present dispute. We assume this has something to do with the exclusive jurisdiction of the tribal court. In the present case, we need not consider possible jurisdiction of a tribal court to resolve a challenge to the validity of the agreement because the tribe has not urged exclusive tribal court jurisdiction to resolve the validity of the contract, and the record reflects that the tribe has no court of competent jurisdiction to resolve this dispute.

Based on the conclusions we have reached concerning the posture of the litigation, we affirm that portion of the district court's ruling assuming jurisdiction to hear the application to compel arbitration. We also uphold that court's jurisdiction to resolve the tribe's federal defenses to the validity of the agreement. However, our inquiry does not end at this point. We agree with the premise advanced in *Bruce H. Lien*, 93 F.3d at 1417, that, if the entire agreement is invalid under federal law, this would also invalidate the provision in the agreement for arbitration of disputes.[1]

---

1. We note that the federal court in *Sokaogon Gaming*, 86 F.3d at 661, suggests that, under the holding of *Prima Paint Corp. v. Flood &* *Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), a finding of invalidity as to the main contract will not

Consequently, we must consider whether, on the record presented, the federal law challenges to the validity of the entire agreement, including the arbitration clause, were properly resolved by the district court.

### IV. Challenge to the Validity of the Agreement.

The Iowa Gaming Regulation Act requires that all management contracts be approved by the National Indian Gaming Council (NIGC). 25 U.S.C. § 2711. For purposes of this requirement, the applicable agency regulation defines a management contract as "any contract, subcontract, or collateral agreement between an Indian tribe and a contractor or between a contractor and a subcontractor if such contract or agreement provides for the management of all or part of a gaming operation." 25 C.F.R. § 502.15.

■ The consulting firm has contended throughout this litigation that its contract with the tribe is not a management agreement and thus need not receive NIGC approval. Federal courts have held that the determination of whether a particular arrangement is a management contract need not be based entirely on the language of the particular agreement with the tribe. *United States ex rel. Bernard v. Casino Magic Corp.*, 293 F.3d 419, 424 (8th Cir. 2002). Extrinsic evidence may be considered, including a review of the activities performed and expected to be performed under the agreement. *Id.*

In the present case, the tribe on January 2, 1997, inquired of the NIGC whether its agreement with the consulting firm was a management contract requiring NIGC

approval. The NIGC responded to that request as follows:

> Although we are not prepared to conclude, at this time, that the agreement is a management contract, it does raise several concerns about the actual relationship between the consultant and the tribe. For this reason, the matter has been referred to the Enforcement Division for further investigation regarding whether the consultant is acting as a *de facto* manager of the gaming operation.

In a later communication with the tribe dated November 4, 1998, the NIGC stated:

> As you know, we have subjected the Tribe's relationship with IMCI [the consulting firm] to intense scrutiny. Our field investigator visited twice; we have reviewed materials which have been submitted by the Tribe and the Tribe's Gaming Commission as well as information provided by Mr. Junkins' counsel; and two attorneys from the NIGC visited Tama and conducted interviews of a number of individuals.

> At this point, I have decided not to commit additional resources to this matter. While it is clear that Mr. Junkins, as the agent of IMCI [the consulting firm], played an active role in the development of the expanded casino and hotel facilities, it is not possible to conclude on the basis of the existing evidence, that his conduct constituted management of all or part of the Meskwaki gaming operation within the meaning of the Indian Gaming Regulatory Act.

In its challenge to the consulting firm's effort to compel arbitration, the tribe contends that, notwithstanding the failure of the NIGC to find that the contract at issue here was a management contract as de-

necessarily invalidate the arbitration clause. We do not believe that the *Prima Paint* decision supports that result in the present case. If the agreement was a management contract,

all provisions thereof, including the arbitration clause, required NIGC approval pursuant to 25 U.S.C. § 2711.

fined in 25 C.F.R. § 502.15, that agreement was a management contract and is thus void for want of NIGC approval. The district court rejected this contention on two grounds: (1) the NIGC has made a determination that the agreement is not a management contract; and (2) in the prior federal litigation to enforce arbitration, the federal court of appeals characterized the agreement as one over which federal courts were without jurisdiction. We believe that in so ruling the district court has mischaracterized both the nature of the NICG's action and the scope of the federal court adjudication.

■ The action taken by the NIGC was only an investigation by its enforcement division to determine whether the consulting firm's actions were unlawful because it was acting pursuant to an agreement, which the NIGC was required to approve and had not. That investigation did not produce enough evidence to support the issuance of sanctions against the consulting firm. At no time in the process, however, did the NIGC purport to render an adjudication of the validity of the agreement. Consequently, we view that issue as still open for the tribe to assert by way of defense to the present suit to compel arbitration.

With respect to the district court's reliance on the federal court of appeals' characterization of this action as "a routine contract action," that conclusion was reached solely on the allegations of the consulting firm's federal court complaint in accordance with the federal law "well-pleaded complaint rule." *See Iowa Mgmt. & Consultants*, 207 F.3d at 488. The court's decision did not involve in any way an adjudication of whether the contract was a management contract for which NIGC approval was required.

We are convinced that the tribe has sufficiently asserted a challenge to the entire agreement, including the arbitration clause, based on a failure to secure approval of the NIGC as required by 25 U.S.C. § 2711. The district court erred in resolving this issue as a matter of law based entirely on the motion papers in the proceedings to compel arbitration. Genuine issues of material fact exist that must be resolved in order to adjudicate this federal-law defense to the effort to compel arbitration.

## V. *The Tribal Gaming Commission's Rejection of the Agreement.*

An issue concerning the validity of the contract between the consulting firm and the tribe that may be determined at this time as a matter of law is the tribe's contention concerning the action of its tribal gaming commission. That commission was created by a tribal gaming ordinance enacted in accordance with 25 U.S.C. § 2710(d)(1). Prior to the present litigation, that commission purported to invalidate the agreement at issue here on the ground that it was a management contract not approved by the NIGC. In addition, under the tribal ordinance, the tribal gaming commission has authority to withhold approval of certain agreements that are not management contracts. These are agreements

entered into by the tribe's gaming enterprise or by any management contractor on behalf thereof ... if the contract:

(1) Exceeds the value of $5000.00 in any 12–month period.

(2) Is a contract in which any employee, agent or contractor, including any management contractor employed by the Tribe or by the tribe's gaming enterprise, or any officer or director of any such management contractor or of any parent company thereof has either a direct or indirect economic or beneficial interest.

■ We are satisfied that the tribal gaming commission's apparent conclusion concerning whether the disputed agreement was a management contract is without preclusive effect for purposes of the district court's determination of that issue in the present case. In *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1043–44 (9th Cir.1996), the federal court determined that a tribal gaming commission was without authority to adjudicate the validity of a private-party agreement with the tribe. Rather, its function was to monitor compliance by management contractors with the governing agreement and federal law. *Crow Tribe of Indians*, 87 F.3d at 1043–44.

With respect to the tribe's contention that the tribal gaming ordinance gives it authority to curtail contracts that are not management contracts if they exceed the value of $5000, that grant of authority is limited to contracts entered into by the tribe's gaming enterprise or any management contractor on behalf thereof. As the district court correctly found, the present contract was not entered into by the tribe's gaming enterprise but rather by the tribal council. Consequently, the contract is not one that must be approved by the tribal gaming commission under the ordinance.

The tribe also urges that the compact that it entered into with the State of Iowa acknowledges the authority of the tribal gaming commission to render decisions such as that commission's ruling that the consulting firm's agreement with the tribe required NIGC approval. We are convinced that the decisions relegated to the tribal gaming commission under the compact do not include the power to decide whether a particular agreement is a management agreement under 25 C.F.R. § 502.15.

We have considered all issues presented. The judgment of the district court is affirmed in regard to its assumption of jurisdiction to hear and decide both the petition to compel arbitration and the tribe's federal-law defenses thereto. The district court's judgment is reversed to the extent that it attempted to resolve the tribe's assertion of contract invalidity under 25 U.S.C. § 2711 without a hearing and the presentation of evidence relating to that issue. The case is remanded for further proceedings in the district court consistent with this opinion. Costs are assessed equally between the parties.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**