RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0300P (6th Cir.)
File Name: 04a0300p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

MATCH-E-BE-NASH-SHE-
WISH BAND OF
POTTAWATOMI INDIANS, a
Federally Recognized Indian
Tribe,

       *Plaintiff-Appellee,*

       *v.*

KEAN-ARGOVITZ RESORTS
and KEAN-ARGOVITZ
RESORTS, MICHIGAN, L.L.C.,

       *Defendants-Appellants.*

No. 03-1267

———————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00194—Gordon J. Quist, District Judge.

Argued: June 15, 2004

Decided and Filed: September 8, 2004

———

2    *Match-E-Be-Nash-She-Wish Band v.*    No. 03-1267
    *Kean-Argovitz Resorts, et al.*

———

Before: GILMAN and COOK, Circuit Judges; CLELAND,
District Judge.[*]

———————

## COUNSEL

**ARGUED:** Ronald S. Lederman, SULLIVAN, WARD,
ASHER & PATTON, Southfield, Michigan, for Appellants.
Conly J. Schulte, MONTEAU & PEEBLES, Omaha,
Nebraska, for Appellee. **ON BRIEF:** Ronald S. Lederman,
SULLIVAN, WARD, ASHER & PATTON, Southfield,
Michigan, for Appellants. Conly J. Schulte, Shilee T. Mullin,
MONTEAU & PEEBLES, Omaha, Nebraska, for Appellee.

    GILMAN, J., delivered the opinion of the court, in which
COOK, J., joined. CLELAND, D. J. (pp. 13-17), delivered a
separate concurring opinion.

———————

## OPINION

———————

    RONALD LEE GILMAN, Circuit Judge. In November of
1998, the Match-E-Be-Nash-She-Wish Band of Pottawatomi
Indians (the Tribe) entered into two agreements with Kean-
Argovitz Resorts and Kean-Argovitz Resorts, Michigan,
L.L.C. (collectively KAR) relating to the development and
management of a proposed gaming facility in Michigan.
Before the agreements had been approved by the Chairman of
the National Indian Gaming Commission (NIGC), the Tribe
unilaterally terminated its relationship with KAR. The Tribe
then filed this action in federal court, seeking both a

———

    [*]The Honorable Robert H. Cleland, United States District Judge for
the Eastern District of Michigan, sitting by designation.

declaration that the agreements are void and a permanent injunction to prevent KAR from attempting to enforce the arbitration clause contained in one of the agreements. KAR filed a counterclaim, seeking to compel the Tribe to submit to arbitration. The district court concluded that the agreements were void under federal law and accordingly granted summary judgment in favor of the Tribe. For the reasons set forth below, we **VACATE** the judgment of the district court and **REMAND** the case with instructions to refer the case to arbitration.

## I. BACKGROUND

### A. Factual background

The Tribe is a federally recognized Indian tribe located in the Western District of Michigan. It does not presently occupy any land as part of a reservation. According to KAR, the Tribe did not become federally recognized until August of 1999.

In November of 1998, the Tribe and KAR entered into both a Management Agreement and a Development Agreement relating to a proposed gaming facility that was to be located on tribal lands in Michigan. Under the Development Agreement, KAR was obligated to make monthly advances to the Tribe and agreed to loan it as much as $100,000,000 for the project. KAR advanced approximately $1,000,000 to the Tribe between November of 1998 and January of 2000.

The Development Agreement contains an arbitration clause, which states that "[t]he parties agree that binding arbitration . . . shall be the remedy for all disputes, controversies and claims . . . arising out of any of these agreements." Another relevant provision of the Agreement states that

[t]his is intended to be a legally enforceable agreement, independent of the Management Agreement, which shall

enter into effect when executed and delivered by the parties, and be enforceable between the parties regardless of whether or not this Agreement or the Management Agreement is approved by the Chairperson of the NIGC.

In January of 2000, the Tribe unilaterally terminated its agreements with KAR. Approximately one year later, KAR submitted a demand for arbitration to the American Arbitration Association and served a copy upon the Tribe. The Tribe refused to submit to arbitration on the ground that the entire Development Agreement, and therefore the arbitration clause, is void under the Indian Gaming Regulatory Act of 1988 (IGRA), 25 U.S.C. §§ 2701-21, because the Agreement was never approved by the Chairman of NIGC. IGRA and its related regulations provide that any Indian gaming management contract, or any agreement collateral to a management contract, is void until approved by the Chairman of NIGC. *See* 25 U.S.C. § 2711(a)(1) and (3); 25 C.F.R. § 533.7.

### B. Procedural background

In March of 2002, the Tribe filed this action in the district court, seeking a declaratory judgment and injunctive relief. KAR filed a counterclaim to require the Tribe to submit to arbitration. Both parties filed motions for summary judgment. The district court granted the Tribe's motion and denied KAR's. This timely appeal by KAR followed.

## II. ANALYSIS

### A. Standard of review

The Development Agreement in the present case involves interstate commerce and therefore falls within the ambit of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-14. "This court reviews *de novo* a district court's ruling on whether to compel arbitration pursuant to the FAA." *Burden v. Check Into Cash*,

267 F.3d 483, 485 (6th Cir. 2001). "Under the FAA, a district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties' claims." *Id.*

## B.    Enforceability of the arbitration provision

In *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002), this court explained the application of Section 4 of the FAA, 9 U.S.C. § 4, as follows:

> Section 4 of the FAA sets forth the procedure to be followed by the district court when presented with a petition to compel arbitration. That section provides, in relevant part, that
>
> > [a] party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof. . . .
>
> *    *    *
>
> The Supreme Court has explained that in deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole:

> > [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.
>
> *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Once the district court determines that a valid agreement to arbitrate exists, challenges to other distinct parts of the contract are to be resolved by the arbitrator. *Id.*

*Great Earth Companies*, 288 F.3d at 888-90.

Relying on *Great Earth Companies* and *Prima Paint*, KAR contends that "Plaintiff never contested the validity of the arbitration provision itself; the Tribe instead contested the validity of the Development Agreement in its entirety. . . . Applying controlling Supreme Court and Sixth Circuit authority, it was within the exclusive authority of the arbitrator to resolve this issue." The district court disagreed, holding that the arbitration clause is unenforceable because the Development Agreement is void under IGRA.

We have found no federal case that has squarely addressed whether a court must enforce an arbitration clause that is part of an agreement subject to IGRA that has not been approved by the Chairman of the NIGC. This court addressed an analogous set of facts, however, in *Burden v. Check Into Cash of Kentucky, L.L.C.*, 267 F.3d 483 (6th Cir. 2001), where the plaintiffs claimed that Check Into Cash, a check-cashing company, had violated both federal and Kentucky law by lending money to hundreds of Kentucky consumers at usurious interest rates. *Id.* at 485-87. Check Into Cash requested that the district court compel arbitration based upon

an arbitration clause contained in the loan agreements. *Id.* at 486-87. In response, the plaintiffs alleged that the arbitration clause was unenforceable because the loan agreements were void ab initio. Check Into Cash was not licensed by the state, contrary to Kentucky statutes that require finance companies to obtain a license from the state and declare that any loan made by an unlicensed company is void. *See* Ky. Rev. Stat. §§ 288.420, 288.991(1).

The district court in *Burden* concluded that the plaintiffs' allegation—that the loan agreements containing the arbitration clause were void ab initio—must be determined by a court rather than an arbitrator. 267 F.3d at 487. This court vacated the judgment of the district court, reasoning as follows:

> Plaintiffs' allegations primarily concern the substance of the loan agreements, which Plaintiffs then argue are "void" under [Kentucky law]. However, . . . Plaintiffs['] allegations . . . do not concern their failure to assent to the loan agreements, and do not concern signatory power. Accordingly, because Plaintiffs' allegations . . . challenge the substance, rather than the existence, of the loan agreements, we vacate the district court's [decision that those allegations must be decided by the court rather than the arbitrator].

*Id.* at 490. The case was then remanded for the district court to consider several of the plaintiffs' remaining arguments against the enforceability of the arbitration clause. *Id.* at 493 ("[W]e vacate the district court's order and remand for further consideration of Defendants' motion to compel arbitration in light of Plaintiffs' allegations that the arbitration agreements are unenforceable on grounds that the agreements would impose burdensome costs, deny statutory rights, and constitute an uninformed waiver of jury trial rights.").

The operative facts in the present case are quite similar to those in *Burden*. In both cases, the parties seeking to avoid arbitration contend that the arbitration clause is unenforceable because the agreement as a whole is void pursuant to a statute. As in *Burden*, the Tribe does not deny that it entered into the agreement in question. Nor does it claim that the agreement was executed by someone who lacked signatory power. Because the material facts of these cases are legally indistinguishable, *Burden* compels us to conclude that the Tribe's allegation that the Development Agreement is void under federal law "challenge[s] the substance, rather than the existence," of the Development Agreement. The district court therefore should have granted KAR's motion to compel arbitration.

Our conclusion is consistent with the case of *Bruce H. Lien v. Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Assoc. Inc.,* 86 F.3d 656 (7th Cir. 1996), where the Seventh Circuit considered whether a tribe's agreement to an arbitration clause contained in a management contract constituted a waiver of sovereign immunity. In *Sokaogon Gaming*, the tribe contended that the entire contract, which was executed prior to the effective date of IGRA, was illegal because it had not been approved by the Bureau of Indian Affairs (BIA) as required by pre-IGRA law. *Id.* at 658. Before reaching the merits of the dispute, the court noted that "[a]lthough the arbitration clause is contained in a contract that the tribe contends is illegal, the tribe rightly does not argue that the illegality of the contract infects the arbitration clause." *Id.* at 659. This comment supports KAR's position in the present case, despite the fact that it was not further developed because the parties, as the court conceded, did not raise the issue. *Id.*; *see also Iowa Mgmt. & Consultants, Inc. v. Sac & Fox Tribe*, 656 N.W.2d 167, 172 n.1 (Iowa 2003) (characterizing the statement in *Sokaogon Gaming* as a suggestion rather than a holding).

We are cognizant of the fact that the Iowa Supreme Court reached a contrary result in *Sac & Fox Tribe*, holding that "if the entire [management] agreement is invalid under federal law [because of a lack of NIGC approval], this would also invalidate the provision in the agreement for arbitration of disputes." 656 N.W.2d at 171. But the Iowa court's entire analysis of the issue consisted of the following statement in a footnote:

> We note that the federal court in *Sokaogon Gaming*, 86 F.3d at 661, suggests that, under the holding of *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), a finding of invalidity as to the main contract will not necessarily invalidate the arbitration clause. We do not believe that the *Prima Paint* decision supports that result in the present case. If the agreement was a management contract, all provisions thereof, including the arbitration clause, required NIGC approval pursuant to 25 U.S.C. § 2711.

*Sac & Fox Tribe*, 656 N.W.2d at 172 n.1.

With all due respect, we do not believe that the Iowa Supreme Court persuasively distinguished *Prima Paint*. We are bound, moreover, by our own decision in *Burden* regardless of the contrary decision in *Sac & Fox Tribe*. *See* Rule 206(c) of the Sixth Circuit Rules ("Reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court en banc consideration is required to overrule a published opinion of the court.").

Nor are we persuaded by the two federal cases relied on by the Tribe. One is *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412 (8th Cir. 1996), where the tribes contended that a purported management contract was invalid because the contract was signed by a person without authority to act on behalf of the tribes. The Eighth Circuit stated that "[t]his challenge to the document itself therefore calls into question all provisions contained therein (including provisions relating to arbitration, sovereign immunity, and federal district court jurisdiction)." *Id.* at 1417. *Three Affiliated Tribes* is clearly distinguishable from the present case, however, because in that case the tribe argued that the contract was invalid because of a lack of signatory power. In that regard *Three Affiliated Tribes* is consistent with *Burden*, where this court recognized that an allegation of a lack of signatory power constitutes a challenge to the very existence of the contract, which under *Prima Paint* must be resolved by the court rather than an arbitrator. 267 F.3d at 489-90. Here, by contrast, there is no question regarding the proper execution of the Development Agreement.

The other federal case relied on by the Tribe is the Ninth Circuit's decision in *AK Management Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785 (9th Cir. 1986), which considered the enforceability of a pre-IGRA management contract that had not been approved by the BIA. Like IGRA, the relevant statute at that time provided that management contracts that had not received BIA approval were "null and void." *Id.* at 786 n.1. The Ninth Circuit held that the district court had properly dismissed the complaint because "the waiver of sovereign immunity is clearly part of the Agreement, and is not operable except as part of that Agreement. Since the entire contract is inoperable without BIA approval, the waiver is inoperable and, therefore, the tribe remains immune from suit." *Id.* at 789. The Ninth Circuit explained its reasoning as follows:

> [The statute] explicitly provides that a contract is "null and void" without written approval from the BIA. Therefore it is logical to conclude that an agreement without BIA approval must be null and void in its entirety. No part of it may be enforced or relied upon unless and until BIA approval is given. BIA approval is

an absolute prerequisite to the enforceability of the contract. To give piecemeal effect to a contract as urged by AK, would hobble the statute. The plain words of [the statute] simply render this contract void in the absence of BIA approval. Since it is void, it cannot be relied upon to give rise to *any* obligation by the Band. . . .

*Id.* (emphasis in original).

But *AK Management* is distinguishable from the present case because the management contract at issue there did not contain an arbitration clause. Where a contract contains an arbitration clause, and the parties do not challenge either the existence of the contract or the making of the clause, the controlling precedent of both the Supreme Court and this court require that the validity of the contract be first determined by an arbitrator rather than by a district court. *Prima Paint*, 388 U.S. at 403 (a "federal court [must] order arbitration to proceed once it is satisfied that the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue") (quotation marks omitted); *Burden*, 267 F.3d at 490 (stating that arbitration is appropriate where the claim challenges the substance of the contract rather than its existence).

We recognize that remanding this case so that it can be sent to arbitration might seem like an inefficient result. IGRA, after all, provides that any management contract or collateral agreement not approved by the Chairman of the NIGC is void. But the Tribe does not challenge either the making of the arbitration clause or the existence of the contract. Evidence of the parties' intent to enter into a binding agreement, moreover, is supplied by the fact that KAR has advanced nearly $1,000,000 to the Tribe under the Development Agreement and by the clause in the Agreement that states that "[t]his is intended to be a legally enforceable agreement . . . which shall enter into effect when executed and

delivered by the parties, and be enforceable between the parties regardless of whether or not this Agreement or the Management Agreement is approved by the Chairperson of the NIGC."

Under these circumstances, the Tribe cannot attack the validity of the arbitration clause simply by claiming that the entire agreement is too ephemeral to deserve recognition. Both *Prima Paint* and *Burden* therefore require that the Agreement's enforceability be determined in the first instance by an arbitrator.

## III. CONCLUSION

For all of the reasons set forth above, we **VACATE** the judgment of the district court and **REMAND** the case with instructions to refer the case to arbitration.

---

**CONCURRENCE**

---

CLELAND, District Judge, CONCURRING.    I am compelled to agree that this case cannot legitimately be distinguished from *Burden v. Check Into Cash of Kentucky, L.L.C.*, 267 F.3d 483 (6th Cir. 2001), and I note that the majority's decision is written clearly and concisely to that end.  I write separately only because I believe *Burden* defined "void" too narrowly and consequently left a gap in the discourse concerning the void/voidable distinction for purposes of the severance doctrine.

The plaintiffs in *Burden* challenged a contract where a state statute pronounced loan agreements made by unlicensed lenders to be "void."  Similarly, our instant case involves a challenge to a contract where a federal statute requires the Chairman of the National Indian Gaming Commission's signature on casino management agreements and in its absence holds any such contract "void."

In *Burden*, the court suggested that void, or void *ab initio*, agreements should not be subject to the severance doctrine. *Burden*, 267 F.3d at 488-89.  In other words, if an entire contract were deemed void, or void *ab initio*, the arbitration clause could not be enforced and the district court could adjudicate the underlying claims.  *Burden*, however, concluded that a voidness challenge to a contract based upon *statutory* authority (as in this case) should not be construed as a void *ab initio* allegation.  Rather, *Burden* held a void *ab initio* challenge requires more than an allegation of a statutory violation.  *Id.* at 490.  According to *Burden*, void *ab initio* allegations, for purposes of the severance doctrine, must be based upon one of only two challenges: (1) allegations of a failure to assent to the contract, and (2) challenges to signatory power.  Accordingly, the challenge raised by the plaintiffs in *Burden* and the Indian Tribe in this case, which allege that the entire contract is void under state or federal law, do not amount to void *ab initio* allegations.

The analysis in *Burden*, in my view, is incomplete and seems to be at odds with the conclusion ultimately reached in that case.  First, the court extensively discussed why it thought that the void/voidable distinction mattered for the severance doctrine, and stated that it tended to agree with other circuits that have found that *Prima Paint* does not apply to allegations of nonexistent (i.e., void) contracts.[1]  It stated:

The void/voidable distinction is relevant for *Prima Paint* analysis because a void contract, unlike a voidable contract, was never a contract at all.  Thus, a valid arbitration agreement "cannot arise out of a broader contract if no broader contract ever existed." *Sandvik,* 220 F.3d at 108.  Accordingly, *Prima Paint* "presumes an underlying, existent, agreement." *Id.* at 106.

*Burden*, 267 F.3d at 488 (citing *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir. 2000)).  After discussing this circuit's precedent, the court stated that it was inclined to follow the reasoning of several sister circuits that have held that *Prima Paint* does not apply to allegations of a nonexistent (void) contract. *Id.* at 489 ("Indeed, if anything,

---

[1]Under *Prima Paint,* a court, rather than an arbitrator, can decide a claim of fraud in the inducement, but only if the claim of fraud concerns the inducement of the arbitration clause itself, not the inducement of the contract as a whole. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967).  The Court in *Prima Paint* found that arbitration clauses were "separable" from the contracts in which they were included, and that "a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced from fraud." *Id.* at 402.  "If the arbitration clause is not at issue, then the arbitrator will decide challenges to the contract containing the arbitration clause." *C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 912 F.2d 1563, 1567 (6th Cir. 1990).

No. 03-1267    *Match-E-Be-Nash-She-Wish Band v.*    15
Kean-Argovitz Resorts, et al.

16    *Match-E-Be-Nash-She-Wish Band v.*    No. 03-1267
Kean-Argovitz Resorts, et al.

we are inclined to find that *Prima Paint* supports, rather than prohibits, excluding nonexistent contracts from the severability doctrine, because an allegation of a void contract raises exactly the same question as an allegation of a fraudulently induced arbitration agreement: whether the arbitrator has any power at all."). The court approvingly quoted the Seventh Circuit's common sense approach: "No contract, no power." *Id.* (citing *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001)).

But then, despite its apparent endorsement of the void/voidable distinction, the *Burden* court took a sharp turn, leaving that distinction by the wayside, and went on to conclude without any substantial explanation that the void/voidable principles just discussed did not apply to the contract at issue simply because it had been challenged as void under a state statute. The court cited a Ninth Circuit case and discussed its general illustrations of agreements that Circuit had found to be void *ab initio*. The *Burden* court concluded that void *ab initio* challenges must involve allegations of either a failure to assent or an absence of signatory power. *Id.* at 490 (discussing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136 (9th Cir. 1991)). The *Burden* court found that the challenge presented to the contract's existence did not constitute a void *ab initio* challenge (as that concept was, in *Burden,* now defined). To the *Burden* court, it followed directly from that conclusion that the contract must be subject to the severability doctrine.

Unfortunately, the *Burden* court said only what the challenge was not, and not what it was. It was not either of the two varieties of "void *ab initio*" illustrated in *Three Valleys;* it *was,* however, a challenge based precisely upon something else entirely: *statutory* voidness. The question not addressed was whether an arbitration clause in a *statutorily* void contract must be enforced; it was as though there existed an underlying assumption that a claim of statutory voidness was *per se* illegitimate. The *Burden* court therefore implicitly

(perhaps unintentionally) determined that only those challenges that met the narrow void *ab initio* definition set forth therein could be adjudicated by the court. I can find no principled distinction between contracts void and contracts void *ab initio*.[2] The *Burden* court, therefore, essentially rewrote the definition of void. According to *Burden*, a void, or nonexistent contract entails only those agreements where one party lacked assent or where the signatory power is challenged. This too-narrow definition of void (or void *ab initio*, it makes no difference), runs contrary to the clear-headed and, in my view, correct *obiter dicta* earlier in *Burden* discussing the unenforceable nature of void contracts, including the arbitration provisions contained in such contracts. *Id.* at 488-89.

Void and void *ab initio* agreements, as opposed to voidable agreements, are agreements that never existed. Confining void (or void *ab initio*) contracts to a narrow set of circumstances, as the court did in *Burden*, abrogates long-standing principles defining void contracts and holds as of no effect any legislature's decision to deem certain agreements void when they fail to comply with statutory requirements, such as those found in the Indian Gaming Regulatory Act. In this case, it allows a portion of a nonexistent contract to be animated and enforced in direct contravention of an entirely clear federal statute.

The Federal Arbitration Act's policy favoring arbitration cannot compel an agreement to arbitrate where no contract exists. A void contract is simply nonexistent and a provision of a contract that does not exist should not be separately enforceable. This includes an arbitration clause. *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 625 (1985) ("[L]iberal federal policy favoring arbitration

---

[2]A review of written decisions across all federal courts shows that courts consistently use the terms interchangeably.

agreements . . . is at bottom a policy guaranteeing the enforcement of private contractual arrangements.") (citation and quotation omitted).

Constrained as we are by the *Burden* court's narrow definition of void, which I believe should be reexamined at some point by this Circuit, I concur in the majority's decision.