GILMAN, J., delivered the opinion of the court, in which COOK, J., joined. CLELAND, D.J., (pp. 518-21), delivered a separate concurring opinion.
OPINION
GILMAN, Circuit Judge.
In November of 1998, the Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians (the Tribe) entered into two agreements with Kean-Argovitz Resorts and Kean-Argovitz Resorts, Michigan, L.L.C. (collectively KAR) relating to the development and management of a proposed gaming facility in Michigan. Before the agreements had been approved by the Chairman of the National Indian Gaming Commission (NIGC), the Tribe unilaterally terminated its relationship with KAR. The Tribe then filed this action in federal court, seeking both a declaration that the agreements are void and a permanent injunction to prevent KAR from attempting to enforce the arbitration clause contained in one of the agreements. KAR filed a counterclaim, seeking to compel the Tribe to submit to arbitration. The district court concluded that the agreements were void under federal law and accordingly granted summary judgment in favor of the Tribe. For the reasons set forth below, we VACATE the judgment of the district *514 court and REMAND the case with instructions to refer the case to arbitration.
I. BACKGROUND
A. Factual background
The Tribe is a federally recognized Indian tribe located in the Western District of Michigan. It does not presently occupy any land as part of a reservation. According to KAR, the Tribe did not become federally recognized until August of 1999.
In November of 1998, the Tribe and KAR entered into both a Management Agreement and a Development Agreement relating to a proposed gaming facility that was to be located on tribal lands in Michigan. Under the Development Agreement, KAR was obligated to make monthly advances to the Tribe and agreed to loan it as much as $100,000,000 for the project. KAR advanced approximately $1,000,000 to the Tribe between November of 1998 and January of 2000.
The Development Agreement contains an arbitration clause, which states that “[t]he parties agree that binding arbitration ... shall be the remedy for all • disputes, controversies and claims ... arising out of any of these agreements.” Another relevant provision of the Agreement states that
[t]his is intended to be a legally enforceable agreement, independent of the Management Agreement, which shall enter into effect when executed and delivered by the parties, and be enforceable between the parties regardless of whether or not this Agreement or the Management Agreement is approved by the Chairperson of the NIGC.
In January of 2000, the Tribe unilaterally terminated its agreements with KAR. Approximately one year later, KAR submitted a demand for arbitration to the American Arbitration Association and served a copy upon the Tribe. The Tribe refused to submit to arbitration on the ground that the entire Development Agreement, and therefore the arbitration clause, is void under the Indian Gaming Regulatory Act of 1988 (IGRA), 25 U.S.C. §§ 2701-21, because the Agreement was never approved by the Chairman of NIGC. IGRA and its related regulations provide that any Indian gaming management contract, or any agreement collateral to a management contract, is void until approved by the Chairman of NIGC. See 25 U.S.C. § 2711(a)(1) and (3); 25 C.F.R. § 538.7.
B. Procedural background
In March of 2002, the Tribe filed this action in the district court, seeking a declaratory judgment and injunctive relief. KAR filed a counterclaim to require the Tribe to submit to arbitration. Both parties filed motions for summary judgment. The district court granted the Tribe’s motion and denied KAR’s. This timely appeal by KAR followed.
II. ANALYSIS
A. Standard of review
The Development Agreement in the present case involves interstate commerce and therefore falls within the ambit of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-14. “This court reviews de novo a district court’s ruling on whether to compel arbitration pursuant to the FAA.” Burden v. Check Into Cash, 267 F.3d 483, 485 (6th Cir.2001). “Under the FAA, a district court’s consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties’ claims.” Id.
*515 B. Enforceability of the arbitration provision
In Great Earth Companies, Inc. v. Simons, 288 F.3d 878 (6th Cir.2002), this court explained the application of Section 4 of the FAA, 9 U.S.C. § 4, as follows:
Section 4 of the FAA sets forth the procedure to be followed by the district court when presented with a petition to compel arbitration. That section provides, in relevant part, that
[a] party aggrieved by the ... refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance . with the terms of the agreement.... If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof....
* * ‡ íJí :}c *
The Supreme Court has explained that in deciding whether a. valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole:
[I]f the claim is fraud in the inducement of the arbitration clause itself— an issue which goes to the ‘making’ of the agreement to arbitrate — the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in
the inducement of the contract generally. •
Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Once the district court determines that a valid agreement to arbitrate exists, challenges to other distinct parts of the contract are to be resolved by the arbitrator. Id.
Great Earth Companies, 288 F.3d at 888-90.
Relying on Great Earth Companies and Prima Paint, KAR contends that “Plaintiff never contested the validity of the arbitration provision itself; the Tribe instead contested the validity of the Development Agreement in its entirety.... Applying controlling Supreme Court and Sixth Circuit authority, it was within the exclusive authority of the arbitrator to resolve this issue.” The district court disagreed, holding that the arbitration clause is unenforceable because the Development Agreement is void under IGRA.
We have found no federal case that has squarely addressed whether a court must enforce an arbitration clause that is part of an agreement subject to IGRA that has not been approved by the Chairman of the NIGC. This court addressed an analogous set of facts, however, in Burden v. Check Into Cash of Kentucky, L.L.C., 267 F.3d 483 (6th Cir.2001), where the plaintiffs claimed that Check Into Cash, a check-cashing company, had violated both federal and Kentucky law by lending money to hundreds of Kentucky consumers at usurious interest rates. Id. at 485-87. Check Into Cash requested that the district court compel arbitration based upon an arbitration clause contained in the loan agreements. Id. at 486-87. In response, the plaintiffs alleged that the arbitration clause was unenforceable because the loan agreements were void ab initio. Check *516 Into Cash was not licensed by the state, contrary to Kentucky statutes that require finance companies to obtain a license from the state and declare that any loan made by an unlicensed company is void. See Ky.Rev.Stat. §§ 288.420, 288.991(1).
The district court in Burden concluded that the plaintiffs’ allegation — that the loan agreements containing the arbitration clause were void ab initio — must be determined by a court rather than an arbitrator. 267 F.3d at 487. This court vacated the judgment of the district court, reasoning as follows:
Plaintiffs’ allegations primarily concern the substance of the loan agreements, which Plaintiffs then argue are “void” under [Kentucky law]. However, ... Plaintiffs[’] allegations ... do not concern their failure to assent to the loan agreements, and do not concern signatory power. Accordingly, because Plaintiffs’ allegations ... challenge the substance, rather than the existence, of the loan agreements, we vacate the district court’s [decision that those allegations must be decided by the court rather than the arbitrator].
Id. at 490. The case was then remanded for the district court to consider several of the plaintiffs’ remaining arguments against the enforceability of the arbitration clause. Id. at 493 (“[W]e vacate the district court’s order and remand for further consideration of Defendants’ motion to compel arbitration in light of Plaintiffs’ allegations that the arbitration agreements are unenforceable on grounds that the agreements would impose burdensome costs, deny statutory rights, and constitute an uninformed waiver of jury trial rights.”).
The operative facts in the present case are quite similar to those in Burden. In both cases, the parties seeking to avoid arbitration contend that the arbitration clause is unenforceable because the agreement as a whole is void pursuant to a statute. As in Burden, the Tribe does not deny that it entered into the agreement in question. Nor does it claim that the agreement was executed by someone who lacked signatory power. Because the material facts of these cases are legally indistinguishable, Burden compels us to conclude that the Tribe’s allegation that the Development Agreement is void under federal law “challenge[s] the substance, rather than the existence,” of the Development Agreement. The district court therefore should have granted KAR’s motion to compel arbitration.
Our conclusion is consistent with the case of Bruce H. Lien v. Three Afflicated Tribes, 93 F.3d 1412 (8th Cir.1996) Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Assoc. Inc., 86 F.3d 656 (7th Cir.1996), where the Seventh Circuit considered whether a tribe’s agreement to an arbitration clause contained in a management contract constituted a waiver of sovereign immunity. In Sokaogon Gaming, the tribe contended that the entire contract, which was executed prior to the effective date of IGRA, was illegal because it had not been approved by the Bureau of Indian Affairs (BIA) as required by pre-IGRA law. Id. at 658. Before reaching the merits of the dispute, the court noted that “[although the arbitration clause is contained in a contract that the tribe contends is illegal, the tribe rightly does not argue that the illegality of the contract infects the arbitration clause.” Id. at 659. This comment supports KAR’s position in the present case, despite the fact that it was not further developed because the parties, as the court conceded, did not raise the issue. Id.; see also Iowa Mgmt. & Consultants, Inc. v. Sac & Fox Tribe, 656 N.W.2d 167, 172 n. 1 (Iowa 2003) (characterizing the statement in Sokaogon *517 Gaming as a suggestion rather than a holding).
We are cognizant of the fact that the Iowa Supreme Court reached a contrary result in Sac & Fox Tribe, holding that “if the entire [management] agreement is invalid under federal law [because of a lack of NIGC approval], this would also invalidate the provision in the agreement for arbitration of disputes.” 656 N.W.2d at 171. But the Iowa court’s entire analysis of the issue consisted of the following statement in a footnote:
We note that the federal court in Sokaogon Gaming, 86 F.3d at 661, suggests that, under the holding of Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), a finding of invalidity as to the main contract will not necessarily invalidate the arbitration clause. We do not believe that the Prima Paint decision supports that result in the present case. If the agreement was a management contract, all provisions thereof, including the arbitration clause, required NIGC approval pursuant to 25 U.S.C. § 2711.
Sac & Fox Tribe, 656 N.W.2d at 172 n. 1.
With all due respect, we do not believe that the Iowa Supreme Court persuasively distinguished Prima Paint. We are bound, moreover, by our own decision in Burden regardless of the contrary decision in Sac & Fox Tribe. See Rule 206(c) of the Sixth Circuit Rules (“Reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court en banc consideration is required to overrule a published opinion of the court.”).
Nor are we persuaded by the two federal cases relied on by the Tribe. One is Bruce H. Lien Co. v. Three Affiliated Tribes, 93 F.3d 1412 (8th Cir.1996), where the tribes contended that a purported management contract was invalid because the contract was signed by a person without authority to act on behalf of the tribes. The Eighth Circuit stated that “[t]his challenge to .the document itself therefore calls into question- all provisions contained therein (including provisions relating to arbitration, sovereign immunity, and federal district court jurisdiction).” Id. at 1417. Three Affiliated Tribes is clearly distinguishable from the present case, however, because in that case the tribe argued that the contract was invalid because of a lack of signatory power. In that regard Three Affiliated Tribes is consistent with Burden, where this' court recognized that an allegation of a lack of signatory power constitutes a challenge to the very existence of the contract, which under Prima Paint must be resolved by the court rather than an arbitrator. 267 F.3d at 489-90. Here, by contrast, there is no question regarding the proper execution of the Development Agreement.
The other federal case relied on by the Tribe is the Ninth Circuit’s decision in AK Management Co. v. San Manuel Band of Mission Indians, 789 F.2d 785 (9th Cir.1986), which considered the enforceability of a pre-IGRA management contract that had not been approved by the BIA. Like IGRA, the relevant statute at that time provided that management contracts that had not received BIA approval were “null and void.” Id. at 786 n. 1. The Ninth Circuit held that the district court had properly dismissed the complaint because “the waiver of sovereign immunity is clearly part of the Agreement, and is not operable except as part of that Agreement. Since the entire contract is inoperable without BIA approval, the waiver is inoperable and, therefore, the tribe remains immune from suit.” Id. at 789. The *518 Ninth Circuit explained its reasoning as follows:
[The statute] explicitly provides that a contract is “null and void” without written approval from the BIA. Therefore it is logical to conclude that an agreement without BIA approval must be null and void in its entirety. No part of it may be enforced or relied upon unless and until BIA approval is given. BIA approval is an absolute prerequisite to the enforceability of the contract. To give piecemeal effect to a contract as urged by AK, would hobble the statute. The plain words of [the statute] simply render this contract void in the absence of BIA approval. Since it is void, it cannot be relied upon to give rise to any obligation by the Band....
Id. (emphasis in original).
But AK Management is distinguishable from the present case because the management contract at issue there did not contain an , arbitration clause. Where a contract contains an arbitration clause, and the parties do not challenge either the existence of the contract or the making of the clause, the controlling precedent of both the Supreme Court and this court require that the validity of the contract be first determined by an arbitrator rather than by a district court. Prima Paint, 388 U.S. at 403, 87 S.Ct. 1801 (a “federal court [must] order arbitration to proceed once it is satisfied that the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue”) (quotation marks omitted); Burden, 267 F.3d at 490 (stating that arbitration is appropriate where the claim challenges the substance of the contract rather than its existence).
We recognize that remanding this case so that it can be sent to arbitration might seem like an inefficient result. IGRA, after all, provides that any management contract or collateral agreement not approved by the Chairman of the NIGC is void. But the Tribe does not challenge either the making of the arbitration clause or the existence of the contract. Evidence of the parties’ intent to enter into a binding agreement, moreover, is supplied by the fact that KAR has advanced nearly $1,000,000 to the Tribe under the Development Agreement and by the clause in the Agreement that states that “[t]his is intended to be a legally enforceable agreement ... which shall enter into effect when executed and delivered by the parties, and be enforceable between the parties regardless of whether or not this Agreement or the Management Agreement is approved by the Chairperson of the NIGC.”
Under these circumstances, the Tribe cannot attack the validity of the arbitration clause simply by claiming that the entire agreement is too ephemeral to deserve recognition. Both Prima Paint and Burden therefore require that the Agreement’s enforceability be determined in the first instance by an arbitrator.
III. CONCLUSION
For all of the reasons set forth above, we VACATE the judgment of the district court and REMAND the case with instructions to refer the case to arbitration.